ISRAEL E. BOUCHER & others *vs.* HAMILTON MANUFAC-TURING COMPANY.

Suffolk.     March 25, April 4, 6, 1927.— April 13, 1927.

Present: RUGG, C.J., PIERCE, CARROLL, WAIT, & SANDERSON, JJ.

*Receiver. Equity Jurisdiction,* Receivership proceedings. *Equity Pleading and Practice,* Report, Findings by judge. *Evidence,* Judicial notice, Matter of common knowledge, Statements in open court. *Corporation,* Officers and agents.

A report by a judge of a Superior Court to this court in a suit in equity is in the nature of an extension of the record in the form of a statement in writing of that which was in the mind of the judge when his decision was made.

In a report by a judge of a Superior Court to this court of his findings and rulings in granting a decree giving leave to receivers of the property of a textile mill corporation to sell its property at private sale on certain terms, the judge stated that the decree was entered by virtue of certain findings reported by him and also "in the exercise of what was intended to be a reasonable discretion in view of all circumstances called to my [the judge's] attention by the receivers, stockholders, and others, and of certain facts in regard to the condition of the textile industry commonly reported, and of which I took judicial notice"; and also stated, "Sales of similar mill property in . . . [certain cities] — at approximately ten per cent of the assessed value are matters of common knowledge." At the argument on the report in this court, objecting minority stockholders attacked those statements as constituting an error of law on the part of the judge by extending beyond permissible bounds the doctrine of judicial notice and thus vitiating the decree founded in part thereon. The judge then requested permission to amend his report to clear the "ambiguity" so that this court might "have a clear understanding of the exact situation and that complete justice may be done," by explaining, "All the facts referred to in said report as facts of which I 'took judicial knowledge' were reported to me in open court by" the receiver as facts which he had ascertained in his official capacity

and were not challenged or contradicted during any proceeding in court. *Held,* that

(1) While it is the general rule that after argument before this court no change can be made in the record, in the circumstances and considering the nature of the proceeding, this court received the supplemental report for the purpose of interpreting in its light the words of the original report, but without relaxing the general rule above stated;

(2) There was no error in the circumstances in accepting as facts, and using as a basis for a decree, statements by the receiver, made in open court and without contradiction, as to the general condition of the textile industry and as to sales of similar mill property in other cities of this Commonwealth;

(3) There was no error in the judge's accepting as facts the statements made by the receiver and not disputed by the other parties, or in using them as a basis for his decree.

The evidence not being reported in the report by the judge, above described, his findings of fact must be accepted as true and the entry of the decree must be taken to import a finding of subsidiary facts so far as necessary to warrant that action; which left as the only question open on the report, whether the decree ought to have been entered in the exercise of judicial discretion on the allegations of the bill and of the petition of the receivers for authority to sell and on the facts found.

It was *held,* that, upon the record and report above described, the adequacy of the price for which the sale was authorized was not presented in such a form as enabled this court to say that the decree ought to be reversed on that ground in view of all the circumstances.

While the terms of any sale by receivers must be such as to convert the property within a reasonable time into cash, so that distribution can be made to those in interest, and creditors and stockholders cannot be required to accept stock or securities of a new corporation in return for their existing property, the court has jurisdiction to order a sale within reasonable limits on such credit and mortgage as will result in cash for distribution within a reasonable time.

The mere fact, that the offer which was the basis of the decree above described was made conditional at the option of the offerers upon the simultaneous sale of a part of the property, was *held* not to be fatal to the validity of the decree, it appearing that it would immediately become apparent whether the condition would be effective.

Upon the report, and by reason of recitals in the record accompanying it, a contention by minority stockholders that the decree was invalid because no notice had been given of the precise offer which was accepted, the original offer having been amended after the order of notice had been made returnable, was *held* not to be open.

The sale which the decree above described authorized was for all the property of the corporation for the sum of $700,000 payable as follows: $100,000 cash and two notes of the old corporation for $25,000 each to be delivered at the time of the signing of the agreement; $150,000 in cash on passing of papers; the balance, approximately $395,000, to be paid in bonds of a Massachusetts corporation to be organized to take title to the property, payable in or within one year, to be secured by

mortgage, and to bear interest. The item of $100,000 was to be paid by a former officer and director of the old corporation and the two notes accompanying it were notes of that corporation to him. This comprised the greater portion of his estate. For it he was to receive stock in the new corporation and a covenant not to sue him for any liability as officer or director of the defendant, or otherwise. There was to be excepted from the sale all claims of the corporation or its receivers against any present or past officers and directors and other individuals, firms or corporations liable to the defendant for actionable wrongdoing or breach of duty in connection with its recent financial difficulties except against the officer above described. *Held,* that

(1) The court had power to authorize the receivers to compromise the claim against the officer in question;

(2) For lack of facts in the record, it was impossible to say as a matter of law that the action of the judge in approving such a compromise, so far as it rested upon facts, was wrong or ought to have been set aside;

(3) The acceptance of the notes of the old corporation could not be held to be a preference in favor of the former officer, and, creditors not objecting, the conditions of the sale as to him could not be held to have been invalid.

The provisions in the decree, to the effect that the offerers were to receive a commission of five per cent amounting to $35,000 in the event that all the preferred and common stock in the new corporation was taken by the present stockholders of the old corporation, did not require the setting aside of the decree, it appearing that they had been approved by the trial judge, and the evidence as to work done by the promoters not being reported.

The ordering of a sale of property in the hands of a receiver and the price and terms of sale rest in judicial discretion and, unless there is error of law, such an order will not commonly be set aside except in cases where there is abuse of discretion; upon the report above described, it was *held,* that no error of law or abuse of discretion was shown, and the decree was affirmed.

BILL IN EQUITY, filed in the Superior Court on June 15, 1926, by trustees under a declaration of trust of a voluntary association known as "Dumaines," Whitin Machine Works and Firth-Smith Company, corporations, all creditors of the Hamilton Manufacturing Company, seeking the appointment of a receiver of the property of that corporation on the ground that the further conduct of its business without the appointment of a receiver would result in a great shrinkage in the value of its assets and property applicable to the payment of its debts, and, although its total liabilities other than its capital stock were not in excess of its total assets, there was grave danger that without such appointment of

a receiver the total shrinkage of assets from all causes would be so great as to make it impossible to pay all creditors in full.

The defendant answered, admitting all material allegations of the bill, and further averred that, inasmuch as its current assets were not sufficient to meet its debts, the deficiency must be realized upon its real estate and machinery, the market value of which was uncertain and difficult to estimate; that such real estate and machinery had greater market value if they could be disposed of while the defendant was a going concern, and that for this reason it was desirable for its creditors and stockholders that it be kept in operation and not closed summarily by attachment or otherwise.

By order of *Bishop*, J., receivers were appointed on July 2, 1926. On December 11, 1926, the receivers filed the petition for leave to sell, described in the opinion. Further proceedings in the Superior Court before *Morton*, J., and the decree entered by his order are described in the opinion.

*R. C. Evarts*, (*W. M. Burse*, with him,) for certain stockholders.

*H. W. Brown*, for the receiver.

*C. F. Choate, Jr.*, for a creditor of the defendant.

*B. E. Eames*, (*C. H. Tyler & J. P. Wright* with him,) for Robert F. Marden and John H. Murphy, prospective purchasers.

Rugg, C.J. In July, 1926, in a suit by creditors, receivers were appointed of the defendant, a Massachusetts corporation which for many years had conducted successfully the business of manufacturing and selling cotton goods at Lowell in this Commonwealth. The receivers filed a petition for authority to sell at public auction the property of the defendant, wherein they set forth that they had conducted the business of the defendant to the end that all but its fixed assets be converted into cash and receivables, and that as a result no raw cotton, yarn or finished product was in its mill, and finished cloth on hand was in its warehouse, and that its machinery and buildings had been cleaned and put in order and were "in charge of a skeleton crew consisting of watchmen and firemen," and that in their opinion a sale of its property would be wise, having regard to the interests of the

defendant and its creditors. At the hearings upon this petition, it appeared that an offer to purchase at private sale had been made to the receivers. A decree was entered authorizing sale in accordance with that offer and without auction. The judge reported for the consideration of this court the decree and order for sale.

The judge found that the "rights and interests of the creditors, stockholders, and all parties in interest would be better protected and the value of the company's remaining assets be better conserved by the acceptance" of the offer. Relevant facts set forth in the report are that the carrying charges for the property are about $4,900 a week; that for about a year it has been known to shareholders and the public that the property was for sale and full opportunity has been given to the shareholders to reorganize, and constant efforts have been made by the receivers to obtain offers; that the offer in question is the only real one made to the receivers, although an oral offer for cash of $400,000 with a payment down of $50,000 was made, and "just prior to the receivership an offer of $500,000 had been made to the company with a payment down of $5,000;" that unless the present "offer was accepted it was apparent that the property should be sold at once by public auction"; that differences of opinion existed among experts about the probable result of an auction sale; that at a hearing another judge of the Superior Court had concluded that no more than $500,000 would be obtained at a public sale; that the condition of the textile industry in Massachusetts and particularly in Lowell is serious; that no facts appeared leading "to any reasonable probability of obtaining as much by a public" auction as by accepting the offer; that the price obtained thereby "will pay the creditors almost in full and give the shareholders at least a chance to obtain something on account of their shares."

The decree of sale recites the offer made to the receivers. Its substance is that the offerers will buy all the property of the defendant, including choses in action, with a single exception and excepting also accounts and cash receivable, for the sum of $700,000 payable as follows: (1) $100,000

cash and two notes of the defendant for $25,000 each at time of signing agreement. "This $150,000 in cash and notes is supplied by Arthur R. Sharp. Mr. Sharp is willing to participate in the purchase to this amount in consideration of his release" from the suits and claims of the defendant or its receivers against him as officer or director of the defendant. (2) $150,000 in cash on passing of papers, the offerers simultaneously to be afforded. opportunity at their option to make sale for their own account on prices and terms to be determined by them of mills numbered 2, 4 and 6, and an office building. (3) The balance, approximating $395,000, to be paid in bonds of a Massachusetts corporation to be organized to take title to the property, payable in or within one year, to be secured by mortgage, and to bear interest. The decree also recites that the offerers propose to tender participation in the purchase to the stockholders of the defendant by organizing a Massachusetts corporation with an authorized issue of seven thousand shares of five per cent preferred $100 par stock noncumulative and seven thousand shares of no par common stock; the seven thousand shares of preferred to be offered to present stockholders at $100 per share payable in cash, each share of preferred stock so taken and paid for to carry with it one share of no par common stock; the present stockholders to have the right to subscribe at the rate of one share of preferred stock with one share of common stock for each five shares of stock now held. It is also recited in the decree that "For the advance of approximately $150,000 to be made by Arthur R. Sharp under paragraph 1 of said offer, he is to take preferred stock and no par common stock at the same price as subscribing stockholders. Should all the preferred and common stock be taken by the present stockholders in accordance with said offer," the offerers "are to receive five per cent commission in cash, to wit, $35,000, which payment in that event would be their entire reward in the enterprise. Any balance of the no par common stock not taken by subscribers to preferred stock as aforesaid is to remain the property of" the offerers. The form of the authority for sale need not be further recited save to say that there is to be excepted

from the sale to the offerers all claims of the defendant or its receivers against any present or past officers and directors and other individuals, firms or corporations liable to the defendant for actionable wrongdoing or breach of duty in connection with its recent financial difficulties, and as a part of the transaction the receivers are authorized "to execute and deliver to Arthur R. Sharp an appropriate instrument in the form of a covenant not to sue said Arthur R. Sharp, his heirs, executors, administrators and assigns either as an officer or director of said company or otherwise, on account of any matter heretofore existing," not thereby releasing or discharging any other officer or director.

It is stated in the report that at next to the last hearing on the question of the approval by the court of the acceptance "of the offer no objection was raised" and at the last hearing, counsel for the appealing stockholders objected to the entry of the decree but not to its form. No argument has been presented at the bar of this court against the decree except in behalf of stockholders.

The decree authorizing sale in accordance with the offer was entered by virtue of these findings, as recited in the original report, and also "in the exercise of what was intended to be a reasonable discretion in view of all circumstances called to my [the judge's] attention by the receivers, stockholders, and others, and of certain facts in regard to the condition of the textile industry commonly reported, and of which I took judicial notice." The judge further said in the original report, "Sales of similar mill property in the cities of Lowell, Lawrence, New Bedford, and Fall River at approximately ten per cent of the assessed value are matters of common knowledge." When the case was argued before the full court, sharp attack was made upon these two statements as constituting an error of law on the part of the judge by extending beyond permissible bounds the doctrine of judicial notice and thus vitiating the decree founded in part thereon. Thereupon the judge, in order that the "ambiguity" in this particular in his original report might be removed and that the "Supreme Judicial Court may have a clear understanding of the exact situation and that complete justice may be

done," at once requested the permission of this court to file a supplementary report or to amend his original report by adding thereto the following: "All the facts referred to in said report as facts of which I 'took judicial knowledge' were reported to me in open court by Mr. Rowley as receiver, while the matter in question was being heard, as facts which he had ascertained in connection with the discharge of his duties as receiver and such report was made by Mr. Rowley in his official capacity as a part of his report and recommendation to the court in favor of the acceptance of the offer . . . . Said facts so reported by Mr. Rowley were not challenged or contradicted by any persons present in court when said report was made nor did any such persons object to the consideration of said facts by me in reaching my decision. I believed said facts to be true and accepted them as such and gave them due consideration in reaching my decision. Other than as above stated I took judicial knowledge or notice of no facts whatever in connection with this matter except the general depressed condition of the textile industry in New England. The sales of similar mill properties in Lowell, Lawrence, New Bedford and Fall River, referred to in the report, were specifically reported to me by name by Mr. Rowley in the manner and under the circumstances above set forth."

The case comes before us on report. Such a report is "in the nature of an extension of the record in the form of a statement in writing of that which was in the mind of the judge when his decision was made." *Worcester* v. *Lakeside Manuf. Co.* 174 Mass. 299, 300. It is to be noted that no exception is reported concerning the subject of judicial notice. It is doubtful if any question of law on that point is open. Passing that, it is the general rule that after argument before this court no change can be made in the record. Attempts to correct alleged mistakes must be made before that stage is reached. *Johnson* v. *Couillard*, 4 Allen, 446. See *Perry* v. *Breed*, 117 Mass. 155, 164. The case at bar, however, is a suit in equity. Under our practice such a report is designed to show what was in the mind of the judge in making the decree. The report relates to the administra-

tion of a manufacturing property by the court itself through its receiver, and to the proper means of bringing that administration toward an end by sale of the property. According to the amended statement emanating directly from the judge, the report as originally framed failed to accomplish the desired result. We therefore receive the supplemental report for the purpose of interpreting in its light the words of the original report, but without relaxing the general rule above stated. *Tighe* v. *Maryland Casualty Co.* 216 Mass. 459. *Burbank* v. *Farnham*, 220 Mass. 514, 516. G. L. c. 231, §§ 124, 125.

There was no error in the circumstances here disclosed in accepting statements as to the general condition of the textile industry and as to sales of similar mill property in other cities of this Commonwealth when made in open court and without contradiction. Such information may naturally have influenced a rational mind in deciding the practical business question confronting the court, whether a specific offer for the purchase of a textile manufacturing plant at private sale ought to be accepted, or whether it ought to be refused and the property risked on the uncertainty of a public auction.

The original report gave the appearance of transcending the bounds of judicial notice. *Mady* v. *Holy Trinity Roman Catholic Polish Church*, 223 Mass. 23, 26. *Commonwealth* v. *Sookey*, 236 Mass. 448, 451, 452. *Commonwealth* v. *Lanides*, 239 Mass. 103. *Commonwealth* v. *King*, 150 Mass. 221, 224. *Lajoie* v. *Milliken*, 242 Mass. 508, 520, and cases there collected. *Johnson's Case*, 242 Mass. 489, 492. *Opinion of the Justices*, 231 Mass. 603, 610. *Commonwealth* v. *Helfman*, 258 Mass. 410, 417. Wigmore on Evidence, (2d ed.) §§ 2580, 2583. But however that may be, it is common practice for a judge to accept as facts statements made by counsel and not disputed and use them as basis for action. There is no error in this aspect of the case. See, for example, *Dwyer* v. *Dwyer*, 239 Mass. 188, 190; *Cook* v. *Mosher*, 243 Mass. 149, 152.

There is no report of the evidence. The findings of fact made by the judge must be accepted as true. The entry of the decree imports the finding of subsidiary facts so far as

necessary to warrant that action. The only question open is whether the decree ought to have been entered in the exercise of judicial discretion on the allegations of the bill and of the petition of the receivers for authority to sell and on the facts found. *First Baptist Society in Brookfield* v. *Dexter,* 193 Mass. 187, 189. *Wickwire Spencer Steel Corp.* v. *United Spring Co.* 247 Mass. 565, 569. *Commissioner of Banks in re Cosmopolitan Trust Co.* 249 Mass. 144, 147. *Martin* v. *Jablonski,* 253 Mass. 451, 453.

It follows that the adequacy of the price for which the sale is authorized is not presented in any such form as enables us to say that the decree ought to be reversed on that ground in view of all the conditions. The sale value of a manufacturing plant whose operation has been suspended depends upon many factors. *Stein* v. *Strathmore Worsted Co.* 221 Mass. 86, 89, 90. Not the least of these is prosperity or depression in the particular branch of industry. The circumstances that the appraisal presumably made under order of the court was $1,600,000, and that the assessed value for taxation purposes was more, are by no means decisive. Even the persuasive force of such valuations would be affected by a variety of considerations which might have been in the mind of the judge and which need not be enumerated. The cost of keeping the property and depreciation resultant upon its continued idleness are elements of significance. "All circumstances called to" the attention of the judge "by the receiver, stockholders and others," cover or well may cover many facts bearing upon the reasonableness of the sale price not reproduced in the record. It cannot be said that the price stated in the decree is wrong. *Massachusetts General Hospital* v. *Belmont,* 233 Mass. 190, 205–208. *Westport* v. *County Commissioners,* 246 Mass. 556, 559, 562.

The offer is not of a cash payment in full, but contemplates part payment in bonds of the corporation to be organized to take over the property secured by mortgage on its property and payable within one year. The terms of any sale by receivers must be such as to convert the property within a reasonable time into cash, so that distribution can be made

to those in interest.   Creditors and stockholders cannot be required to accept stock or securities of a new corporation in return for their existing property.   But the court has jurisdiction to order a sale within reasonable limits on such credit and mortgage as will result in cash for distribution within a reasonable time.   *People* v. *Anglo-American Savings & Loan Association,* 60 App. Div. (N. Y.) 389, 404.   See *Craig* v. *James,* 89 App. Div. (N. Y.) 541, 545; affirmed, 181 N. Y. 538.   Whether such payment would be permissible against the objection of creditors need not be determined. See *In re Prudential Outfitting Co. of Delaware,* 250 Fed. Rep. 504.   No creditor objects in the case at bar.   So far as appears, the creditors favor the decree.   Protesting minority stockholders have embarked their investment in the corporation.   They must accept within the limits of the law what is determined to be for the best interests of all the stockholders and of the corporation.

The offer is made conditional at the option of the offerers upon the simultaneous sale of a part of the property.   This, however, is not fatal to the validity of the decree.   It will become immediately apparent whether the condition will be effective.   The offer, nevertheless, may be for the best interests of all concerned.

Argument has been addressed to the point that the decree is invalid because no notice had been given of the precise offer which was accepted.   That matter is not reported and is not open.   It is stated in the record that the "receivers were directed to give written notice to all stockholders of record, counsel of record, creditors, and all interested parties to appear and show cause why the said petition should not be allowed," and further that the "decree was entered only after due notice in writing to shareholders of the offer and several hearings, during which the terms of the offer and the plans of reorganization" were explained in full.   The fact that the original offer was amended after the order of notice thereon was made returnable is not decisive.   All parties may have been represented in court and made no objection to the amendment.   In these circumstances it must be

presumed that adequate notice was given or waived.   This matter is not open to these stockholders.

A substantial part of the offer concerns one Sharp, a former officer and director of the defendant.   He is to furnish toward the entire price $100,000 in cash and two notes of the defendant for $25,000 each, which comprise the greater portion of his estate, and is to receive a covenant not to sue him for any liability as officer or director of the defendant, or otherwise.   So far as this relates to a compromise of claims of the defendant against Sharp, the record affords no ground for disturbing the decision of the Superior Court. The power of the court to authorize the receiver to compromise claims of the corporation against third persons cannot be doubted.   It is conceded by the contesting stockholders.   Claims of a corporation for malfeasance or any breach of duty on the part of its directors or officers and the right to enforce them constitute assets of the corporation to be dealt with by the receiver under the direction of the court. *Bartlett* v. *New York, New Haven & Hartford Railroad,* 221 Mass. 530.   *Commissioner of Banks in re Cosmopolitan Trust Co., supra.   Bonner* v. *Chapin National Bank of Springfield,* 251 Mass. 401.   *Briggs* v. *Spaulding,* 141 U. S. 132, 147–150. The nature of the liability of Sharp to the defendant is not set out in the record.   Whether on available evidence the case against him would turn out to be strong or weak cannot be determined.   Whether the expense of prosecuting such claim to final judgment would be small or large cannot be ascertained.   How long such litigation might delay the settlement of the receivership cannot be foretold.   It has been found as a fact that this amount to be put into the purchase price comprises "the greater portion of his estate." It therefore is impossible on this record to decide that action of the judge, so far as it rests upon facts, is wrong or ought to be set aside.   The decree in this particular cannot in our opinion quite be pronounced contrary to law.   The transaction must be viewed as a whole.   The advancement of $100,000 in cash and the extinguishment of $50,000 of the defendant's indebtedness are no mean factors in the sale. These contributions add substantially to the amount ulti-

mately available for distribution. They constitute a material portion of the advance in value of the present offer over and above any suggestion hitherto made. Although these are to become an investment in the new corporation, the receivers gain the direct benefit therefrom. Such an investment would be entirely voluntary. It is matter of common experience that such reorganization schemes do not contain in themselves assurance of success and would not be likely to prove inviting to conservative minded people not already involved in the enterprise. Doubtless it may be presumed that the stock of the new corporation is to be issued in accordance with law and for full value. G. L. c. 155, § 17; c. 156, §§ 14, 15. Nevertheless, the assurance of so substantial a subscription to the stock of the new corporation is of immediate advantage to all concerned. Viewing the transaction as a whole, the covenant not to sue cannot be said to be without consideration.

The acceptance of notes of the defendant to the extent of $50,000 cannot be held to create a preference in favor of Sharp. It may be assumed that no plan of reorganization or sale of a corporation in the hands of a receiver can validly create any preferences between creditors. They must all be treated on the same footing except as any claim in its nature may be preferential. Here again the turning over of the notes is a part of the compromise of the claims of the defendant against Sharp, the settlement of which as a part of the offer places "the greater portion" of his estate in the hands of the receivers. It is incidental to the main transaction which will yield more for distribution than any other plan, according to the findings by the judge. It is to be noted that on this point also there is no objection on the part of any creditors.

The provision in the decree, to the effect that the offerers are to receive a commission of five per cent amounting to $35,000 in the event that all the preferred and common stock in the new corporation be taken by the present stockholders of the defendant, has been approved by the trial court. In the absence of evidence as to work done, scruples as to promoter's fees and business methods in connection with

reorganization of disabled corporations are not sufficient to overcome the findings of the trial judge.

All the objections which have been urged have been considered in detail. It cannot be denied that some aspects of the offer and of the decree in respect to Sharp may be thought to have a sinister appearance. But the decree was entered by the trial judge in charge of the receivers and conversant with details of their administration. He had knowledge of the difficulties encountered in trying to dispose of this manufacturing plant. Indulging all the presumptions in favor of the correctness of his conclusion, we cannot quite say that the decree ought to be set aside. The ordering of a sale of property in the hands of a receiver and the price and terms of sale rest in judicial discretion. Unless there is error of law, such an order will not commonly be set aside except in cases where there is abuse of discretion. *Stokes* v. *Williams*, 226 Fed. Rep. 148. See *Davis* v. *Boston Elevated Railway*, 235 Mass. 482, 502.

*Decree of sale affirmed.*