PAUL D. ZOTTU vs. ELECTRONIC HEATING CORP. & others.

Middlesex.    May 10, 1956. — July 19, 1956.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*Corporation,* Dissolution, Receivership.  *Receiver.  Equity Pleading and Practice,* Decree, Appeal.

A decree appointing receivers of a corporation upon its dissolution under G. L. (Ter. Ed.) c. 155, § 50, by reason of a deadlock of its stockholders and directors and authorizing the receivers "to sell and dispose of all of . . . [its] assets and property . . . either as a unit or separately" properly could under § 51, and did, authorize inclusion of the corporation's good will and trade marks with its other property in a sale thereof as a unit, and no reason appeared for disturbing the trial court's exercise of discretion in entering the decree.  [444–445]

A decree confirming a sale of all the property of a corporation by receivers appointed upon its dissolution under G. L. (Ter. Ed.) c. 155, § 50, should be treated as a final decree for the purposes of an appeal.  [446]

A decree confirming a sale of property by receivers must be affirmed on a record not showing the facts presented to the judge who entered the decree.  [446]

BILL IN EQUITY, filed in the Superior Court on January 7, 1955.

Certain motions by the plaintiff described in the opinion were denied by *O'Connell,* J.  A decree confirming a sale by receivers was entered by *Warner,* J.

*Hugh S. Boyd,* for the plaintiff.

*Daniel A. Lynch,* (*David L. Whitney* with him,) for the receivers.

*James D. St. Clair,* for the defendants Samuels and another.

RONAN, J.   The plaintiff, the holder of fifty per cent of the common stock and one of the four directors of the Electronic Heating Corp., a Massachusetts corporation, brought this bill in equity under G. L. (Ter. Ed.) c. 155, § 50, as amended, against one Samuels and one Racoosin, the remaining stockholders, each holding twenty-five per cent of

the common stock and each being a director of the said corporation (one Heick was the fourth member of the board of directors, who succeeded the plaintiff's wife as a director and voted consistently with the vote of the plaintiff), alleging that the directors and stockholders were equally divided on a question affecting the general management of the corporation and that there seemed to be no way of reaching an agreement or breaking the deadlock, and praying for the appointment of a receiver.

All the stockholders agreed that a receiver should be appointed and Mr. Hall was appointed on January 21, 1955. He filed comprehensive reports fully advising the court of the financial condition of the corporation. In his reports he complained that Zottu was withholding certain property of the corporation. The latter was cited for contempt but purged himself by returning the property. He was also charged with contempt in giving false testimony. He was found guilty and committed to jail. By the end of June, 1955, it appeared to the court that there was no way of breaking the deadlock. The court ordered the corporation dissolved and granted the request of the receiver that he be discharged.

The court on June 30, 1955, appointed Mr. Snow and Mr. Good coreceivers. The fourth paragraph in the decree appointing them read as follows: "That said receivers be and hereby are authorized and directed as soon as reasonably possible to sell and dispose of all of the assets and property (except cash on hand or deposited in banks) at public or private sale, either as a unit or separately, whichever in their opinion shall be for the best interests of the corporation its creditors and stockholders, such sale or sales to be subject to confirmation by the court."

Zottu, so far as appears, did not submit a bid but filed a motion on August 9, 1955, alleging that there was doubt as to the authority of the receivers to sell the assets as a unit or separately as expressed by the said fourth paragraph of the decree appointing them, and praying that instructions be given to the receivers. The motion also prayed that the

interest, if any, of the corporation in its trade marks be determined.[1] A few days later he sought to amend this motion by seeking a temporary restraining order against the receivers to prevent them from opening bids on August 18, 1955, and making the sale.[2] The motions were both denied.

Zottu contends that since the decree of June 30, 1955, adjudicated the dissolution of the corporation, such a corporation, having thereafter no right to continue its business, thereby lost its good will, and also that it abandoned whatever interest it had in its registered trade marks and so they "are within the public domain." There is no claim that the receivers would be able to secure a better offer if the good will and trade marks were not offered for sale with all the other assets except cash and deposits of the corporation. There was no ambiguity in the decree appointing the coreceivers as to what they should sell. The reason for the appointment of the receivers was not that the corporation was insolvent but that there was a deadlock between stockholders who control an equal number of shares. It is strange that one who holds one half of the stock should complain and should desire to have determined the rights of the coreceivers to sell the good will together with the business as a unit. The answer lies in the conduct of Zottu since the appointment of the first receiver on January 21, 1955, in organizing a new corporation which

---

[1] The prayers of this motion were as follows: "1. That the said receivers be instructed, in offering to sell the assets of said corporation as a unit, that no reference to a sale of a going business or goodwill, or other intangible assets be made. 2. That the said receivers be instructed to specifically state the goodwill, and all other intangible assets are excluded from the sale. 3. That the said receivers be instructed that the term 'unit' means 'a collection of tangible items' in this case. 4. That the said receivers be instructed that the trade marks . . . are not assets in their hands, but are in the public domain." — REPORTER.

[2] The motion to amend was filed upon the plaintiff's receipt from the receivers of a letter quoting the fourth paragraph of the decree of June 30, 1955, and stating that pursuant to that decree "and in the direction of making a private sale of the assets and property as a unit" he was invited to submit a bid not later than August 18, 1955, and that the "prospective sale is intended to include all the right, title and interest of the coreceivers in the assets and property of Electronic Heating Corp., including good will, trade name and trade mark rights." — REPORTER.

thereafter actively engaged in competition with the corporation now in receivership. The contentions of Zottu are inconsistent with the plain implication of G. L. (Ter. Ed.) c. 155, § 51, which provides that a corporation shall continue in existence, but not for the purpose of doing business, for three years after its dissolution for the purpose of "enabling it *gradually* to settle and close its affairs" (emphasis supplied). The object of the statute was not to deprive the corporation of property it had at the date of dissolution but to provide for the orderly liquidation of its affairs.

The plaintiff appealed and excepted and had allowed a bill of exceptions. The plaintiff could pursue both remedies covering the same point — useless as that procedure may be. *Shea* v. *Lexington,* 290 Mass. 361, 373. *Pemberton Sq. Operating Co.* v. *Lydon,* 292 Mass. 63, 64. *L. P. Hollander Co. Inc., petitioner,* 301 Mass. 278, 279.

The property was in the control of the court and whether it was for the best interest of all parties concerned that it should be sold at public auction or at private sale, for cash or credit, or such other terms and conditions as may be imposed, rested in the discretion of the court. It was said in *Plumer* v. *Houghton & Dutton Co.* 277 Mass. 209, 220, "The ordering of a sale of property in the hands of a receiver and the price and terms of such a transfer rest mainly in sound judicial discretion. Unless a decree of that nature is based upon material error of law, it will not commonly be set aside save in instances where there has been abuse of discretion." See *Boucher* v. *Hamilton Manuf. Co.* 259 Mass. 259, 272. We see nothing to support the appeal.

Likewise it was a matter of discretion to refuse to grant an injunction. There is not the slightest evidence warranting a finding of an abuse of discretion in denying the motion and the motion to amend. *American Circular Loom Co.* v. *Wilson,* 198 Mass. 182, 211. *Bressler* v. *Averbuck,* 322 Mass. 139, 143. *Bendslev* v. *Commissioner of Public Safety,* 328 Mass. 443, 445. There was no error in denying the motion and the motion to amend.

The receivers filed a petition on August 25, 1955, alleging that they had sold the assets of the corporation to one Marks and had received certified checks aggregating $100,123.54 which they are holding together with a bill of sale running to said Marks pending confirmation of the sale by the court, which they sought.  Orders of notice were given to the parties interested as ordered by the court.  The sale was confirmed on September 7, 1955.  The plaintiff appealed from the decree confirming the sale.  The interlocutory decree confirming the sale is to be treated as a final decree for the purposes of an appeal.  *Hutchins* v. *Nickerson,* 212 Mass. 118, 120.  *Plumer* v. *Houghton & Dutton Co.* 277 Mass. 209, 213.  The decree confirming the sale recites that it was heard upon the arguments of counsel.  It was said in *Boucher* v. *Hamilton Manuf. Co.* 259 Mass. 259, 267, that it is common practice to accept as facts statements of counsel which are not disputed.  Our difficulty is that we do not know what the statements were or that they showed that the acceptance of the offer of Marks was not for the best interest of all parties concerned as impliedly found by the judge in confirming the sale.

It follows that the exceptions are overruled, and the interlocutory and final decrees are affirmed.

*So ordered.*