

FILED

Oct 31 2023, 8:45 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

Peter S. French
John R. Humphrey
Nadine E. McSpadden
Taft Stettinius & Hollister LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

James T. Young
Morgan A. Decker
Rubin & Levin, P.C.
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

David J. Steingart, Bruce A. Steingart, and Kevin C. Steingart,

*Appellants-Defendants,*

v.

Robert P. Musgrave,

*Appellee-Receiver.*

October 31, 2023

Court of Appeals Case No.
22A-CC-2936

Appeal from the
Bartholomew Superior Court

The Honorable
James D. Worton, Judge

Trial Court Cause No.
03D01-2111-CC-5724

**Opinion by Senior Judge Shepard**
Judges Bradford and Weissmann concur.

**Shepard, Senior Judge.**

[1]     In this interlocutory appeal, Appellants David J. Steingart, Bruce A. Steingart, and Kevin C. Steingart (collectively, "Steingarts") challenge the court's

turnover order and two settlement orders in the receivership action. Concluding the court was within its discretion to grant the motions, we affirm and remand solely for recalculation of the amount to be turned over.

## Facts and Procedural History

[2] The Steingarts are member-owners of Ameribridge LLC, an Indiana company. Between July 2019 and March 2021, Ameribridge executed four promissory notes in favor of German American Bank ("Bank") that exceeded a total of $9,000,000.00. Additionally, in April 2021, Ameribridge and the Steingarts, together, executed a promissory note in favor of the Bank for $1,500,000.00.

[3] In November 2021, the Bank filed suit against Ameribridge and the Steingarts alleging, among other things, that the promissory notes were all in default. The Bank also requested appointment of a receiver, and the court appointed Robert P. Musgrave ("Receiver").

[4] The following October, Receiver moved to settle and compromise two separate causes of action that Ameribridge had pending against Greenwalt CPAs, Inc. and Watermark Group, LLC for accounting services the firms provided to Ameribridge. Following a hearing, the court granted the motions.

[5] The next month, Receiver filed his "First Motion for Turnover" requesting the court to order David Steingart to return certain assets of Ameribridge, specifically funds totaling $296,847.81. The court granted that motion as well.

David moved to stay the turnover order and then filed an interlocutory appeal as of right under Appellate Rule 14(A)(1). The Steingarts later filed a separate notice of appeal of the court's orders to settle and compromise and alleged the appeal was interlocutory as of right under Appellate Rule 14(A). This Court consolidated the two appeals under this cause number.

Receiver then moved to partially dismiss this appeal, contending the court's orders to settle and compromise are interlocutory orders that are not appealable as of right and thus not properly before this Court. The motions panel of this Court voted to deny Receiver's motion, and the parties finished briefing.

## Issues

The Steingarts present two issues for our review, which we restate as:

> I. Whether the trial court erred by granting the motion for turnover; and

> II. Whether the court erred by granting the motions to settle and compromise.

## Discussion and Decision

### I. Turnover Order

#### A. Nature of Receiverships

A receivership is an equitable remedy, the purpose of which is to secure and preserve property or assets for the benefit of all interested parties, pending litigation. *See* 24 Ind. Law Encyc. *Receivers* §§ 2, 3 (2023); *see also Ring v. Ring*,

51 N.E.3d 1245 (Ind. Ct. App. 2016) (quoting *In re Marriage of Gore*, 527 N.E.2d 191, 196-97 (Ind. Ct. App. 1988)). The court appointing the receiver controls and continuously supervises the property in a receivership as well as directing and advising the receiver and, in its discretion, granting him or her the necessary powers to carry out the duties. 75 C.J.S. *Receivers* §§ 127, 130 (2023). Indiana Code section 32-30-5-7 provides a nonexclusive list of powers a court may grant to a receiver, not the least of which is to "take and keep possession of the property." Ind. Code § 32-30-5-7(2) (2003).

For their part, the parties have a duty to deliver to the receiver all property in their possession that is included in the court's order. 75 C.J.S. *Receivers* § 100 (2023). Should the receiver be hindered in obtaining possession of the property, he or she has the authority to request the court to act to prevent interference with, or the denial of, his or her possession of the property. 24 Ind. Law Encyc. *Receivers* § 32 (2023).

## B. Standard of Review

The court's turnover order is an interlocutory order for the payment of money appealable pursuant to Appellate Rule 14(A)(1). "We generally review interlocutory orders under an abuse of discretion standard." *In re Paternity of Duran*, 900 N.E.2d 454, 462 (Ind. Ct. App. 2009). We review the court's order under this standard for the additional reason that this is an appeal from an order in a receivership where "orders of the court will not be disturbed unless an abuse of discretion is clearly shown." *First Nat. Bank v. Gregg*, 91 Ind. App. 405, 169 N.E. 691, 692 (1930); *see also* 75 C.J.S. *Receivers* § 131 (2023) (on appeal,

order of receivership court will not be interfered with absent abuse of discretion). An abuse of discretion occurs when the court's decision is clearly against the logic and effect of the facts and circumstances or the court has misinterpreted the law. *In re Paternity of Duran*, 900 N.E.2d 454 (quoting *In re Estate of Long*, 804 N.E.2d 1176, 1178 (Ind. Ct. App. 2004)).

### C. Turnover Order

[12] On November 8, 2021, the court appointed Musgrave as Receiver and authorized him, "without limitation," "[t]o take and have complete and exclusive control, possession and custody" of the property of Ameribridge, including all accounts, deposit accounts, money, and other rights to payment in existence or thereafter acquired, and "[t]o receive and collect any and all sums of money due and owing to Ameribridge in any manner, whether the same is now due or shall hereafter become due and payable." Appellants' App. Vol. 2, p. 168. The court further ordered that "all persons are enjoined from in any way disturbing the possession of the Receiver." *Id.*

[13] A full year later, Receiver moved the court to direct David to turn over assets of Ameribridge. Receiver had discovered that in October 2021, eleven days prior to Receiver's appointment, David opened a bank account with US Bank in Minnesota. Receiver obtained bank records for the account showing:

- October 29, 2021 – an initial deposit of $100,000 was made to the account by way of a check made payable to Ameribridge; a second deposit of $35,000 was wired into the account from an account at an institution referred to as

"First Fin Hamilton," and $20,158 was withdrawn in three separate transactions for prepaid credit cards

- November 5 - another check made payable to Ameribridge was deposited into the account in the amount of $55,477.81

- November 8 – Receiver appointed by court; account balance = $170,319.81

- November 9 - $170,000 was wired from the account to the First Fin Hamilton account

- November 10 – a deposit of $85,343.70 was made to the account by way of a check made payable to Ameribridge, but these funds were later recovered by Receiver

- November 12 – $7,559.25 was withdrawn for prepaid credit card(s) and $78,000 was wired to the First Fin Hamilton account

- November 16 – a deposit of $106,370 was made to the account by way of a check made payable to Ameribridge

- November 19 - $21,000 was wired to the First Fin Hamilton account

*Id.* at 233-35, 238-42.

[14] Based on this information, Receiver informed the court in his motion for turnover that a total of $382,191.51 of Ameribridge's assets were deposited into the account and were disbursed without notice to or authorization from

Receiver, contrary to the court's November 8 order appointing Receiver. Receiver recovered $85,343.70 and secured those assets into the receivership account, leaving $296,847.81 unaccounted for. Consequently, Receiver requested the court to direct David to turn over $296,847.81. On November 9, 2022, the court granted Receiver's motion and ordered David to turn over $296,847.81 to Receiver within seven days. On appeal, the Steingarts challenge the turnover order, claiming the Receiver's concerns of misappropriation of the funds are unfounded. Yet, the real issue is whether the court abused its discretion by issuing the turnover order.

[15] As soon as a receiver is appointed and qualified, the entity's assets become receivership assets until final distribution by the court. *Porter Hosp., LLC v. TRK Valpo, LLC*, 212 N.E.3d 683 (Ind. Ct. App. 2023) (quoting *King v. King*, 982 N.E.2d 1026, 1032 (Ind. Ct. App. 2013), *trans. denied*); *see also* 24 Ind. Law Encyc. *Receivers* § 27 (2023) (right and interest of receiver with respect to entity's assets become fixed as of date of receiver's appointment). Therefore, any money in the US Bank account on the day Receiver was appointed was within the scope of and subject to the receivership order, and Ameribridge was obligated to remit to Receiver any and all deposit accounts, money, and other property listed in the order. The Steingarts' failure to turn over to Receiver the funds existing in the US Bank account on November 8, 2021, or thereafter deposited into that account, or to notify Receiver of the existence of such funds was a violation of the receivership order.

[16]    The turnover order—the order now at issue—merely ordered the Steingarts' compliance with the court's previous receivership order. A receivership is a means of safeguarding an entity's assets. To that end, property in receivership remains under the court's control and continuous supervision, and it is the duty of the receivership court to protect the property from interference. 75 C.J.S. *Receivers* § 127; 24 Ind. Law Encyc. *Receivers* § 32. Accordingly, the receivership court has the power to control all controversies that affect such property. 75 C.J.S. *Receivers* § 127. In addition, courts have the inherent power to enforce compliance with their orders. *Noble Cnty. v. Rogers*, 745 N.E.2d 194 (Ind. 2001) (quoting *State ex rel. Brubaker v. Pritchard*, 236 Ind. 222, 226-27, 138 N.E.2d 233, 235 (1956)). Thus, we find no error with the court issuing a turnover order to obtain the assets of Ameribridge.

[17]    Receiver was appointed on November 8, 2021. The evidence before this Court is that the balance in the US Bank account on that date was $170,319.81. Accordingly, those funds became receivership assets. Further, $106,370.00 was deposited into the US Bank account on November 16, and those funds, too, are receivership assets. Together these funds total $276,689.81. Lastly, the parties agree that on November 19, $21,000.00 was transferred out of the US Bank account. The Steingarts claim this money was later turned over to Receiver. Consequently, the amount that should have been turned over to Receiver is either $276,689.81 or $255,689.81 (i.e., $276,689.81 - $21,000.00). Thus, we remand for the sole purpose of amendment of the turnover order directing turn over of either $276,689.81 or $255,689.81 (i.e., $276,689.81 - $21,000.00).

[18] To the extent the Steingarts argue David was deprived of due process because the turnover order was granted without a hearing, we again observe that the order for turnover was not a new, standalone order; rather, it merely directed David to comply with the previously issued receivership order.

## II. Orders to Settle and Compromise

### A. Interlocutory Nature of Orders

[19] The Steingarts next contend the court erred by granting Receiver's motions to settle and compromise. Receiver has responded to the merits of their claims, but he has also reasserted his argument that this part of the Steingarts' appeal is subject to dismissal. While we acknowledge that the motions panel of this Court has already denied Receiver's motion to dismiss, it is well established that we have inherent authority to reconsider the ruling while an appeal remains pending. *See Pryor v. State*, 189 N.E.3d 167 (Ind. Ct. App. 2022) (quoting *Core v. State*, 122 N.E.3d 974, 976-77 (Ind. Ct. App. 2019)). We do so here because "'[i]t is the duty of this Court to determine whether we have jurisdiction before proceeding to determine the rights of the parties on the merits.'" *DuSablon v. Jackson Cnty. Bank*, 132 N.E.3d 69, 75 (Ind. Ct. App. 2019) (quoting *Allstate Ins. Co. v. Scroghan*, 801 N.E.2d 191, 193 (Ind. Ct. App. 2004), *trans. denied*), *trans. denied*.

[20] The appellate authority of this Court is generally limited to appeals from final judgments. *See* Ind. Appellate Rule 5. In addition, generally in a receivership proceeding, an appeal may be taken from a judgment or order only if it is final.

*State ex rel. Unemployment Comp. Bd. of Unemployment Comp. Div. v. Burton*, 112 Ind. App. 268, 44 N.E.2d 506 (1942); *see also* 1A Ind. Law Encyc. *Appeals* § 22 (2023). The parties here agree that the court's orders to settle and compromise are not final orders.

[21] An appeal from a non-final interlocutory order is not permitted unless specifically authorized by the Indiana Constitution, statutes, or the rules of court. *Elda Corp. v. Holliday, LLC*, 171 N.E.3d 124 (Ind. Ct. App. 2021) (quoting *Allstate Ins. Co.*, 801 N.E.2d at 193), *trans. denied*. Appellate Rule 14 confers appellate jurisdiction over interlocutory appeals and provides three avenues by which this Court can acquire jurisdiction in cases other than those involving class action certification: (1) Rule 14(A) allows interlocutory appeals as of right; (2) Rule 14(B) permits discretionary interlocutory appeals; and (3) Rule 14(D) authorizes other interlocutory appeals only as provided by statute. The authorization to file an interlocutory appeal is strictly construed, and any attempt to perfect an appeal without it warrants dismissal. *Elda Corp.*, 171 N.E.3d 124 (quoting *Allstate Ins. Co.*, 801 N.E.2d at 193). While acknowledging that interlocutory appeals are strictly limited and conceding that these orders do not necessarily fit within the narrow confines of Appellate Rule 14(A), the Steingarts nevertheless maintain that the subject of the orders is "closely aligned" with the type appealable as of right under Appellate Rule 14(A)(3). Appellants' Br. p. 20.

[22] Appellate Rule 14(A)(3) provides in relevant part that appeals from interlocutory orders compelling the delivery or assignment of "things in action"

can be taken as a matter of right. It has been established that the rule involves court orders that "'carry financial and legal consequences akin to those more typically found in final judgments . . . .'" *Ball State Univ. v. Irons*, 27 N.E.3d 717, 721 (Ind. 2015) (quoting *State v. Hogan*, 582 N.E.2d 824, 825 (Ind. 1991)). The question here is whether the orders of the trial court authorizing Receiver to compromise and settle Ameribridge's claims against Greenwalt and Watermark Group are such orders. Under the facts of this case, we believe they are.

[23] A "thing in action," also termed "chose in action," is defined as "[t]he right to bring an action to recover a debt, money, or thing." *Chose in Action*, BLACK'S LAW DICTIONARY (11th ed. 2019). Here, if Receiver exercises the authority given him by the orders, Ameribridge will most certainly lose its right to pursue its claims against the accounting firms. Therefore, though the orders to compromise and settle are technically interlocutory, due to the nature of the orders producing financial and legal consequences akin to those more typically found in final judgments and in the interest of judicial economy in this consolidated appeal, we review them here. *See, e.g.*, *Edwards v. Miller*, 47 R.I. 235, 132 A. 609 (1926) (order authorizing receiver to adjust and compromise claims, though technically interlocutory, had element of finality such that court could properly review it).

### B. Standard of Review

[24] As with the first issue, we review this interlocutory receivership order under an abuse of discretion standard. *See First Nat. Bank*, 169 N.E. 691; *see also Bancroft*

*v. Allen*, 138 Fla. 841, 190 So. 885 (1939) (in absence of abuse of discretion, order of court authorizing its receiver to compromise an action will not be disturbed on appeal).

### C. Orders to Compromise and Settle

[25]     Ameribridge had actions pending against both Greenwalt and Watermark Group with regard to accounting services provided by the firms. After investigating the claims, Receiver moved the court for authority to settle, and the court granted the motion as to both firms following a hearing. After this appeal was filed, Receiver finalized Ameribridge's settlement with Greenwalt, and the cause was dismissed with prejudice. Consequently, the issue raised here is moot as to Greenwalt.[1] Accordingly, we decide the propriety of the order to compromise and settle only with regard to Ameribridge's action against Watermark Group, which has been stayed pending resolution of this appeal.

[26]     The importance of the court's role vis-à-vis a receivership cannot be understated—the court controls and continuously supervises the property in a receivership and, in its discretion, grants the receiver the necessary powers to carry out his or her duties. 75 C.J.S. *Receivers* §§ 127, 130. To that end, the court may authorize or approve a compromise when it is in the best interests of

---

[1] In February 2023, acknowledging that Ameribridge's lawsuit against Greenwalt had been dismissed in anticipation of settlement, the Steingarts alleged the payment of money and final settlement had not yet occurred and moved the court to stay the order to compromise and settle. The motions panel of this Court considered the Steingarts' motion and voted to deny it.

the entity, as where the claim or the recovery is doubtful. 75 C.J.S. *Receivers* § 149 (2023); *see also Boucher v. Hamilton Mfg. Co.*, 259 Mass. 259, 270, 156 N.E. 424, 428 (1927) ("The power of the court to authorize the receiver to compromise claims of the corporation against third persons cannot be doubted."). In determining whether a compromise should be authorized, the court must exercise its business judgment to decide whether the proposed compromise is reasonable in the circumstances. 75 C.J.S. *Receivers* § 149.

[27] At the hearing, counsel for the Steingarts contended that the amount of the proposed settlements was not sufficient for Ameribridge's claims against the accounting firms. In response, Receiver summarized his background that includes more than twenty-five years of experience of asset valuation. He explained that in valuing the claims and assessing a compromise with the accounting firms, he considered that (1) the attorney handling the litigation against the accounting firms was charging by the hour, which meant the attorney was unsure of the strength of the case; (2) the attorney estimated his total fees would be $400,000 to $500,000, which meant recovery from the lawsuit would have to be more than $500,000 to assure that the receivership would obtain even $1 for Ameribridge's creditors; (3) the second opinion he obtained from another major law firm indicated it would take the case only on an hourly basis due to the uncertainty of the recovery; (4) it was a complicated case in which the jury would need to understand accounting standards, what went wrong, and why it went wrong, and even then, if the jury awarded Ameribridge anything less than $500,000, the receivership would get $0 for

creditors; (5) his investigation also showed a causation issue; and (6) although the Steingarts offered to finance the litigation, their terms of financing included "paying the litigation cost and seventy five percent upcharge on top of that plus fifteen percent for Mr. David Steingart[,]" requiring "a million dollars with those sort of numbers before the receivership and the creditors of the Ameribridge would receive a penny." Tr. Vol. I, p. 19. In summary, he stated, "Basically, your honor, it came down to this, [$85,000] right now which is almost ten percent of all the money that I managed to collect so far or taking a chance of having the Steingarts finance [the litigation] and trusting that in a couple [or] three years there would be enough to exceed the million dollar cost of pursuing it. It seemed to be no choice whatsoever." *Id.* at 20. The Receiver finished by noting that he is a representative of the court—appointed by and accountable to the court—doing his best to liquidate Ameribridge's assets and pay its creditors.

[28] In its order granting Receiver's motion to settle and compromise Ameribridge's claim against Watermark Group, the court found:

> a. Generally, the Receiver is appointed as an objective agent of the Court to provide certain ministerial activities on behalf of the Court, and as such his recommendation to the Court is treated as a recommendation of an unbiased entity seeking to perform such ministerial activities, here, the timely and orderly liquidation to the assets of defendant Ameribridge LLC;
>
> b. The Receiver at hearing of this matter recited his background and experience in the liquidation and

evaluation of assets in liquidating situations, and the Court takes judicial notice of the Receiver's appointment and service as Chapter 13 Standing Trustee for the United States Bankruptcy Court for the Southern District of Indiana, a position which involves significant exposure to and experience with valuations in a liquidation context;

c. The Receiver at hearing of this matter also reported to the Court his investigation and evaluation of the Cause of Action and the factors upon which he based his recommendation to settle the Cause of Action. These factors included the difficulty of the case; the significant defenses available to the defendants to the Cause of Action; and the six-figure cost of pursuing the Cause of Action provided by the Ameribridge attorney in the pending litigation, which cost is being charged by the attorney for Ameribridge on an hourly basis and so may create a substantial liability for the receivership estate, to the harm of the creditors thereof;

d. The attorney for the defendant in the pending Cause of Action also appeared at the hearing and made statements in support of the pending motion to settle and the Receiver's motion.

3. As to the objection to the amount of the Receiver's proposed settlement, the Shareholders assert that the amount is too low, but provided no factual, evidentiary, or other basis for such conclusory assertion.

Appellants' App. Vol. 2, pp. 28-29.

[29] Though it is clear the trial court was not dealing with certainties, it pragmatically undertook a careful weighing and balancing of a variety of

considerations in arriving at a conclusion as to the course of prudence under the circumstances. In view of these considerations, we cannot say the court's decision to authorize Receiver to compromise Ameribridge's claim against Watermark Group constitutes an abuse of its discretion.

## Conclusion

[30] For the foregoing reasons, we remand for the sole purpose of amendment of the turnover order directing David Steingart to turn over either $276,689.81 or $255,689.81 (i.e., $276,689.81 - $21,000.00) as the court may determine. We affirm the court in all other respects.

[31] Affirmed and remanded.

Bradford, J., and Weissmann, J., concur.