## TORMOHLEN *v.* TORMOHLEN.

[No. 26,571.  Filed May 1, 1936.  Rehearing denied
June 30, 1936.]

*Roscoe D. Wheat,* for appellant.

*Robert L. Smith* and *McClellan & McClellan,* for appellee.

HUGHES, J.—This is an appeal from an order appointing a receiver without notice. On May 10, 1935, the appellee, Maude S. Tormohlen, plaintiff, filed her complaint for divorce against the appellant, Herbert V. Tormohlen, defendant. On the same day the plaintiff filed her verified application for a restraining order asking that the defendant be restrained and enjoined from selling, conveying, or in any way disposing of any of his property or moneys. A restraining order was issued restraining and enjoining the defendant from selling, conveying, or in any way disposing of any of his property or moneys save and except the product produced and sold by him in his business of raising chicks and chickens and selling eggs during the pendency of the action. A copy of the order was ordered served upon Gladys L. Pearson, defendant's bookkeeper, The Citizens Bank of Portland, The People's Bank and The First National Bank, all of Portland, Indiana. On May 11, 1935, the plaintiff filed an application for the appointment of a receiver without notice for all of plaintiff's property. Richard T. James was appointed receiver on said day and was duly qualified.

In the complaint for divorce, the plaintiff alleged that the defendant was the owner of real and personal property of the value of sixty thousand dollars ($60,000.00) and he had an annual income of ten thousand dollars ($10,000.00) and in her petition for suit money, filed at the time of the complaint, she alleged that the defendant was worth over and above all his indebtedness the sum of forty-five thousand dollars ($45,000.00) with an annual income of ten thousand dollars ($10,000.00).

The record shows that summons was ordered issued to the defendant at the time of the filing of the complaint and that on May 13, 1935, the sheriff made a return showing that on said day a copy thereof was left at the last and usual place of residence of the defendant, and the same kind of service and return was made on the petition for suit money. An alias summons was issued on May 14, 1935, to defendant upon the complaint and on the same day the return of the sheriff shows that he served the same upon the defendant by reading to and within his hearing.

The application for the appointment of a receiver without notice states, among other things, that the defendant, appellant here, was the owner of a large amount of personal property consisting of valuable blooded live stock, horses, cattle, hogs, and other personal property; that he operated a chicken hatchery and otherwise dealt in eggs and poultry; that the chicken hatchery was a large and extensive business throughout a wide territory of the United States, having an annual gross income of twenty thousand dollars ($20,000.00), and that the good will and going value of said business is worth in excess of thirty thousand dollars ($30,000.00). It is further stated in the application—"That at the time said action was commenced the defendant had knowledge of said action and knowledge that the court had granted a restraining order against him, but before notice of said restraining order could be served on him the defendant left the jurisdiction of this court and plaintiff is informed and believes that he has left the State of Indiana for the purpose of evading the jurisdiction of this court . . . That prior to his departure, or immediately thereafter, one Roscoe D. Wheat, attorney for the defendant, appeared at the place of business of the defendant and took away with him the defendant's typewriter and letterheads and that plain-

tiff is informed and believes that it is defendant's intention to write the creditors of said hatchery from some point outside the State of Indiana and secure the payment of their accounts to him with intent thereby to prevent the collection of any judgment for alimony plaintiff might obtain in this cause on final judgment."

It is further alleged that Sears, Roebuck and Company of Chicago owed defendant a large amount of money for chicks sold and that the defendant intended to collect the amount due in order to prevent the plaintiff from collecting alimony on final judgment; that the value of said hatchery and egg business depends upon its operation and a receiver should be appointed to operate said business during the pendency of the action; that the defendant has a great many creditors and that a large amount of his property is encumbered and that he intends to dissipate what money he can receive and secure from the income of said business before served with the restraining order of the court. It is further alleged that the whereabouts and present address of the defendant was unknown and therefore impossible to give him notice.

The application for the appointment of a receiver was submitted to the court for trial upon the affidavit of the plaintiff in support thereof and a receiver was promptly appointed. On May 14, 1935, the defendant, appellant here, filed a verified motion to dissolve the order appointing a receiver, which motion was overruled.

The appellant relies upon several assignments of error for reversal but they all relate to the proposition whether the court had the power to appoint a receiver under the circumstances discussed.

Section 3-2602, Burns 1933, provides:

"Receivers shall not be appointed, either in term or vacation, in any case, until the adverse party shall have

appeared, or shall have had reasonable notice of the application for such appointment, except upon sufficient cause shown by affidavit."

As said in the case of *Henderson* v. *Reynolds* (1907), 168 Ind. 522, 526, 81 N. E. 494:

> "It is evident that under said statute it ▮ must appear either in the verified complaint or by affidavit not only that there was a cause for the appointment of a receiver but that there was cause for such appointment without notice. If sufficient cause for not giving reasonable notice is not shown by affidavit the appointment is forbidden by statute and is void."

It is also the law that if a temporary restraining order against the defendant will protect the property in question, a receiver should not be appointed without notice. *Hizer* v. *Hizer* (1929), 201 Ind. 406, 169 N. E. 47. And the cause for appointing a receiver without notice must be evidenced by the existence of facts from which an emergency arises, rendering interference before there is time to give notice necessary in order to prevent waste, destruction, or loss, and showing that protection can not be afforded the plaintiff in any other way. *Tucker* v. *Tucker* (1924), 194 Ind. 108, 142 N. E. 11. Moreover, facts showing cause to exist, as provided for in the statute, must be stated in the application for the appointment of a receiver and the affidavit or affidavits and not mere opinions or conclusions. *Tucker* v. *Tucker, supra; Continental Clay Co.* v. *Bryson* (1907), 168 Ind. 485, 81 N. E. 210. The appointment of a receiver without notice must be a case of imperious necessity and when protection can not be afforded the plaintiff in any other way. *Continental Clay Co.* v. *Bryson, supra.* The same rule of law prevails in the federal courts as in the state courts as to the appointment of a receiver without notice. In the case of *Cabiniss* v. *Reco Mining Co.* (1902), 116 Fed. 318, it is said:

"When such notice can be given it should be given, unless there is imminent danger of loss, or great damage, or irrevocable injury, or the greatest emergency, or when by giving notice the very purpose of the appointment of a receiver would be nugatory; and such instances are rare occurrences in the federal courts, because of their power, when an injunction is asked for, to grant a temporary restraining order which may be served at the same time that the notice is served, to prevent action by the defendant or his agent, and to preserve the existing conditions until the application for an injunction and for a receiver can be heard."

It is generally held by all state courts as well as federal courts, that courts of equity are exceedingly unwilling to appoint receivers on an *ex parte* application without notice, and before the same will be done there must be such a state of facts that shows an imperious necessity and when protection can not be afforded in any other way.

As said in the case of *Kent Avenue Grocery Co.* v. *George Hitz Co.* (1918), 187 Ind. 606, 608, 120 N. E. 659:

"Courts of equity exercise extreme caution in the appointment of receivers *ex parte*. They are averse to dispossessing a party of property *prima facie* his own, and placing it in the hands of a receiver without notice, and such action should not be taken except in cases of the greatest emergency demanding the immediate interference by the court."

In the instant case there were no affidavits filed in support of the application and we can only look to the allegations of the verified complaint in determining the sufficiency of the showing to dispense with the necessity of notice. *Kent Ave. Grocery Co.* v. *Hitz, supra.*

With the foregoing rules of law applicable to the appointment of a receiver without notice—the question in the instant case is: Are the facts and circumstances in the instant case sufficient to sustain the appointment of a receiver thereby dispos-

sessing the appellant of all his property? We do not think so.

It is alleged in the application for a receiver that the defendant was the owner of a large amount of personal property consisting of valuable blooded live stock, horses, cattle, and hogs; that he operated a large and extensive chicken hatchery, consisting of seven incubators, each of the capacity of 47,000 eggs; that he sold chicks over a large territory of the United States and that he conducted other business ventures dealing in poultry and eggs. It further appears from the complaint that he is the owner of property of the value of sixty thousand dollars ($60,000.00) and has an annual income of ten thousand dollars ($10,000.00), and that he is worth over and above all indebtedness forty-five thousand dollars ($45,000.00). It is manifest from the allegations made that the appellant alone could not have managed all of his business as described above and that in the operation of such a varied business of the chicken hatcheries, it would require persons to assist therein who were especially adapted and qualified in said business. It is nowhere alleged in said application for the appointment of a receiver that in the absence of the appellant he did not leave some person or persons in charge of said business. The inference must be that he did and it is specifically stated in the motion to dissolve the order appointing the receiver that persons who had been connected with the business for years, were in charge thereof and were familiar with the operation of the hatcheries and the handling of the chicks and eggs.

The complaint for divorce was filed on May 10, 1935, and it is alleged therein that the appellee and appellant separated on that day—there is no allegation that he was not personally in charge of his business at that time. The restraining order was granted at the time of filing the complaint and on the next day the application

for the appointment of a receiver without notice was filed. It was therein alleged that the "appellee is informed and believes that he (appellant) had left the state." It appears that the sheriff first served a summons on May 13th, "by leaving a true and certified copy at the last and usual place of residence of Herbert V. Tormohlen." Evidently the last and usual place of his residence was at his home with his wife and there is nothing to appear to the contrary. A restraining order had already been issued restraining him from entering his home, and, although he had not been served with notice the appellee alleges that he had knowledge of the same. In the very nature of the circumstances he would not have been at home so that personal service could be had on him. However, on the next day after the sheriff served notice by copy he served notice by reading to appellant. So it is clearly shown that if reasonable notice had been given the appellant of the application for the appointment of a receiver service could have been had upon him and he would then have had an opportunity to resist the appointment of a receiver.

The complaint was filed on May 10th, a restraining order was issued on the same day and on May 11th all of the property of appellant was taken away from him without notice and placed in the hands of a receiver. Under the facts in the case we can not see that there was any imperious necessity or extreme emergency for so doing. And it is only where there is an extreme emergency or imperious necessity that one will be dispossessed of his property in an *ex parte* proceeding and then only when the granting of a restraining order' will not furnish ample protection until notice can be given and the matter judicially determined.

We do not agree, however, with appellant that a receiver may never be appointed in a divorce action. Under

proper circumstances and conditions a receiver may be appointed either under §3-1216 or clause 7 of §3-2601, Burns 1933 (§§923, 1143, Baldwin's 1934). Independently of our statute, it is well recognized by text book writers and decisions of courts of other states that courts have power in divorce actions to appoint a receiver to take possession of property of the defendant within its jurisdiction when necessary to the protection of complainant's rights. 9 R. C. L., p. 249; 53 C. J., p. 23; 19 C. J., pp. 315 and 316; Clark on Receivers, vol. 1, p. 326.

Judgment reversed, with directions to set aside the order appointing a receiver.