MEYERING V. PETROLEUM HOLDINGS, INC., ET AL.

[No. 28,499. Filed May 19, 1949.]

314

*Ortmeyer, Bamberger, Ortmeyer & Foreman,* of Evansville, and *Gray & Waddle,* of Petersburg, for appellant.

*A. K. Swann,* of Evansville, and *Dillin & Dillin,* of Petersburg, for appellees.

YOUNG, J.—Appellant, in the first sentence of "Argument" in his brief, says, "This appeal raises the single question as to whether or not the trial court erred in appointing a receiver in this cause without notice to the defendants, including the appellant."

The appellant, Lawrence V. Meyering, and the appellees, Higgins, Remien and Camfield, are the owners of a half interest in four certain oil and gas leases, covering real estate in Pike County, Indiana. These parties are all residents of the State of Michigan and their interests are alike, except as to the proportion held by each, and they will be referred to hereafter in this opinion as the Michigan group. They have no agents in Indiana upon whom notice or process may be served.

The appellee, Petroleum Holdings, Inc., is an Indiana corporation, with its principal office in Evansville, Indiana, and owns the other half interest in said leases. The appellees, McDonald, McDonald and Eads, are engaged in the business of purchasing oil from oil producers and the appellee, Farm Bureau Oil Company, Inc., is in the same business. The McDonald-Eads group and the Farm Bureau Oil Company, Inc., will be referred to as oil purchasers. They have purchased oil and gas taken from the ground covered by said leases.

The complaint in this case was filed by the appellee, Petroleum Holdings, Inc., against the appellant and the other persons constituting the Michigan group and the persons constituting the oil purchasers, who were made parties because they held money distributable to the persons constituting the Michigan group for oil and gas produced in the operation of said leases. The purpose of the action was to collect from the Michigan group $9,220.57 alleged to be due plaintiff from them as their share of the cost and expense of operating said leases, and to enforce a contractual lien upon the interests of the Michigan group in and under the four oil and gas leases above referred to, including the money belonging to them in the hands of the oil purchasers alleged to be $3,380.35. A receiver was asked to take control of the interests of the Michigan group in and under said leases to prevent loss and waste of the property to which plaintiff's lien had attached.

The complaint was filed on November 8, 1947. At the same time affidavit of non-residence of the defendants constituting the Michigan group was filed and publication of notice of said non-resident defendants was ordered. On November 9, the court made an entry, reciting that the first publication of notice to the non-resident defendants had been made and that summons

for the resident defendants had been issued. This entry then shows that plaintiff's application for a receiver was submitted upon the verified complaint and that the court found that a receiver should be appointed to take over the interest in said leases of the defendants constituting the Michigan group, and a receiver was appointed to take charge of same during the pendency of the action to preserve such leasehold estates and to preserve the interests therein of the defendants constituting the Michigan group, upon which plaintiff held a lien. A receiver's bond was fixed and given and the receiver took oath and qualified.

The complaint is the only evidence before us and we may look to it alone for the facts upon which to decide the case. From it we have gathered all the facts stated in this opinion.

Appellant and the Michigan group are the owners of four described oil and gas leases, one of which is known as the Hunter lease, and another of which is known as the Alice Stewart lease. The Michigan group acquired their several interests in said leases by assignment from appellee Petroleum Holdings, Inc., and at or about the time of such assignment Petroleum Holdings, Inc., and each of the members of the Michigan group entered into a written contract governing the manner in which said leases should be developed and operated. By this written contract it was provided that all costs and expense in connection with the drilling, equipment and operating of said leasehold properties should be paid by the parties in proportion to their respective interests. The duty of operating said properties was delegated to Petroleum Holdings, Inc., subject to a provision that the operator before incurring any single item of expenditure in excess of $1,000, should obtain the consent and approval of the

other parties. It was provided that the operator should pay and discharge all of the costs and expenses incurred in the development of the leasehold estates and charge the other parties their respective proportionate shares thereof, and the operator was, by the terms of said contract, given a lien upon the interest in said leases of each of said other parties, and upon the oil and gas produced therefrom, to secure the payment to the operating party of all amounts becoming due to him and that such lien should be subject to foreclosure in the event of default. Petroleum Holdings, Inc., was also given the privilege of requiring the other parties to advance their shares of development and operating costs upon estimates submitted.

Petroleum Holdings, Inc., as the operating party under said contract, drilled and completed four producing wells and has two additional wells in process of drilling and has rendered monthly statements to the Michigan group of the costs and expenses incurred in such drilling and operation but the Michigan group have failed to pay any part of their share of the costs of the drilling and operation since January 22, 1948, and there was owing from the members of the Michigan group to Petroleum Holdings, Inc., the operator, $9,220.57, as of October 31, 1948. The Michigan group have both verbally and in writing promised to pay their proportionate part of the cost of the development and operation of said leases but have wholly failed to do so, and the Petroleum Holdings, Inc., plaintiff in the case, is unwilling to continue to advance the entire cost of development and operation of said leasehold estates without reimbursement from the Michigan group.

The Hunter lease, by its terms, will expire and be forfeited unless the drilling of a well thereon is commenced on or before November 15, 1948, just one week

after the date of the commencement of this action. This fact was called to the attention of the Michigan group and demand was made upon them for the deposit of their share of the cost of drilling the necessary well on said Hunter lease, but that defendants have wholly ignored such notice and demands and have failed to take any action with respect to said lease, either to authorize plaintiff to commence a well thereon or to notify plaintiff that they will not participate in the expense of drilling said well thereon. There are producing wells upon leases located north and south and west of said Hunter lease, all within a distance of approximately three-eights of a mile or less from the Hunter lease, and said Hunter lease is valuable and justifiies the cost of drilling a test well thereon.

The Alice Stewart lease covers land immediately adjoining a forty acre tract, upon which a producing oil well had been completed within thirty days prior to the filing of the complaint herein. The production of this well is not less than 50 barrels per day and it is located only 330 feet from the north property line of the Alice Stewart lease and by virtue of this fact the oil and gas available through wells drilled upon said Alice Stewart lease is being captured by others and the value of said Alice Stewart leases is being depreciated and plaintiff alleges there is an obligation to lessor created by law to protect the Alice Stewart lease by drilling an offset well thereon within a reasonable time. The Petroleum Holdings, Inc., has called this situation to the attention of the Michigan group and has furnished them with estimates of their pro rata shares of the cost of drilling said offset well but they have not responded.

It is alleged in the complaint that because of the willful and deliberate failure of the Michigan group to

comply with the terms of said operating agreement and furnish their proportionate costs of the development and operation of said leasehold estates, including the cost of a test well on the Hunter lease and the drilling of an offset well on the Alice Stewart lease, the interests of all the parties in said leasehold estates, including the plaintiff Petroleum Holdings, Inc., is in danger of being lost, or materially injured or reduced, and that all of said parties are suffering or are in imminent danger of suffering irreparable injury.

It is further alleged in the complaint that notice to the Michigan defendants may be had only by publication for 51 days in a newspaper. It is alleged that an emergency exists for the appointment of a receiver, for the interest of said Michigan defendants, without notice for the reason that the Hunter lease will expire by its terms before notice or intention to apply for a receiver could be given to said defendants by publication, and that it would be to the best interest of all concerned that a decision be reached as to the drilling of an offset well on the Alice Stewart lease before notice can be given to the defendants who constitute the Michigan group.

The prayer of the complaint is for judgment against the individual members of the Michigan group for the sums which the plaintiff has advanced for them and that plaintiff's lien be foreclosed against the interests of said defendants in said leasehold estates and that the monies being held by the oil purchasing defendants be first applied to the payment of said judgment and that the interests of said defendants in said properties be ordered sold to satisfy its judgment. Plaintiff further prays that a receiver for the interests of the Michigan group in said leasehold estates be appointed forthwith, and without notice, to conserve said properties

and to cooperate with the plaintiff in the further orderly operation and development of said leasehold estates.

We approach a consideration of this case with full realization that upon very few occasions has this court affirmed the appointment of a receiver without notice. It has been said that "Courts of equity exercise extreme caution in the appointment of receivers' *ex parte*. They are averse to dispossessing a party of property *prima facie* his own, and placing it in the hands of a receiver without notice, and such action should not be taken except in cases of the greatest emergency demanding the immediate intereference by the court. . . ." *Kent, etc., Grocery Co.* v. *George Hitz & Co.* (1918), 187 Ind. 606, 608, 120 N. E. 659; *Hawkins* v. *Aldridge* (1937), 211 Ind. 332, 334, 7 N. E. 2d 34; *Morris* v. *Nixon* (1945), 223 Ind. 530, 533, 62 N. E. 2d 772. Such appointments, however, have been affirmed and under our statutes receivers in proper circumstances may be appointed without notice. Section 3-2602, Burns' 1946 Replacement.

This court has held, however, that before a receiver is appointed without notice it must appear not only that there are reasons for appointment of a receiver but also that an emergency exists which justifies such an appointment without notice. *Morris* v. *Nixon, supra,* and cases cited at p. 532; *Henderson* v. *Reynolds* (1907), 168 Ind. 522, 526, 81 N. E. 494; *Hizer* v. *Hizer,* (1929), 201 Ind. 406, 414, 169 N. E. 47; *Tormohlen* v. *Tormohlen* (1936), 210 Ind. 328, 332, 1 N. E. 2d 596.

Our statute providing for appointment of receivers prescribes a number of grounds upon which receivers may be appointed. Section 3-2601, Burns' 1946 Replacement. Among the cases where a receiver may be appointed are actions by a creditor to subject any

property or fund to his claim, and actions between partners or persons jointly interested in any property or fund and in all actions where it is shown that the property or fund in controversy are in danger of being lost or materially injured.

The case before us is an action by the appellee, Petroleum Holdings, Inc., to enforce a lien upon the interests of the defendants in and under certain leasehold estates. It is an action between persons jointly interested in these leasehold estates and it appears that at least two of the leasehold estates involved are in danger of being lost or materially injured. The rights of the lessees under the Hunter lease would terminate unless a well was begun on or before November 15, 1948, and the Stewart lease is being depleted and damaged by the taking of oil through wells upon adjoining property which can only be minimized by the drilling of an offset well on the Stewart lands.

It appears, therefore, that under the allegations of the complaint this is a proper case for the appointment of a receiver.

Section 3-2602, Burns' 1946 Replacement provides that a receiver shall not be appointed without notice *except upon sufficient cause shown by affidavit.* It will be observed that the statute does not define what will constitute sufficient cause, but our decisions have indicated when a receiver without notice properly may be appointed and when not. A leading case involving the appointment of a receiver without notice is *Henderson* v. *Reynolds, supra,* at p. 527, where it is said:

"By the established practice, independent of statute, courts of equity, being averse to interference *ex parte,* will entertain *in ordinary cases* an application for the appointment of a receiver only after

notice to defendant or a rule to show cause. High, Receivers (3d ed.), §§ 111, 112.

"The *exceptional cases* are when the defendant is beyond the jurisdiction of the court, or cannot be found, or when some emergency is shown rendering interference before there is time to give notice, necessary to prevent waste, destruction, or loss; or when notice itself will jeopardize the delivery of the property over which the receivership is extended in obedience to the order of the court. It must be a case of imperious necessity, requiring immediate action and where protection cannot be afforded the plaintiff in any other way. *Continental, etc., Min. Co.* v. *Bryson* (1907), ante, 485, and authorities cited; *Chicago, etc., R. Co.* v. *Cason* (1892), 133 Ind. 49, 51; High, Receivers (3d ed.), §§ 113, 117; Beach, Receivers (2d ed.), §§ 140-143." (Our italics.)

For other cases to the same effect, see *Hizer* v. *Hizer, supra,* pp. 412, 413; *Continental Clay, etc., Co.* v. *Bryson* (1907), 168 Ind. 485, 489, 81 N. E. 210; *Hametic Lodge Bldg. Ass'n* v. *Esters* (1947), 225 Ind. 118, 73 N. E. 2d 46; *Largura Const. Co.* v. *Super-Steel Products Co.* (1939), 216 Ind. 58, 61, 22 N. E. 2d 990; *Bookout* v. *Foreman* (1926), 198 Ind. 543, 546, 547, 154 N. E. 387; *Morris* v. *Nixon, supra.* Each of the above cases holds directly or by necessary implication recognizes that where a defendant is a non-resident and beyond the jurisdiction of the court, a receiver in an emergency may be appointed without notice if a receiver otherwise may be justified.

It seems to us that the case before us is one of the exceptional cases referred to where the appointment of a receiver without notice is proper. The defendants are non-residents and beyond the jurisdiction of the court, and there was an emergency and need for immediate action. One of the leasehold estates upon which plaintiff's lien had attached was about to become for-

feited for failure to drill a first well as required by the lease. The time for drilling such well was only a week away when the complaint was filed. Another leasehold upon which plaintiff's lien had attached was being wasted by failure to protect it by an offset well against depletion through wells on adjacent land. For a case holding that failure to drill an offset well in such a situation justified the appointment of a receiver without notice, see *Ohio Fuel Oil Co.* v. *Burdett, Judge* (1913), 72 W. Va. 803, 79 S. E. 667.

In our decisions a number of conditions precedent to the appointment of a receiver without notice have been pointed out. Before a receiver may be appointed without notice there must appear the probability that he ultimately will be entitled to a judgment or decree. *Hawkins* v. *Aldridge, supra.* In the case before us the allegations of the positively verified complaint show an indebtedness of over $9,000 and the right to a lien to secure the payment of such indebtedness. In view of this situation there is the probability that the plaintiff will be entitled to recover and foreclose his lien on all four leases. Where a person's rights can be protected by a temporary restraining order, or he has another adequate remedy, a receiver without notice will not be appointed. *Hawkins* v. *Aldridge, supra; Morris* v. *Nixon, supra.* In the case before us a temporary restraining order would not be availing and no other adequate remedy occurs to us and none has been pointed out. Waste or loss must be threatened. *Hizer* v. *Hizer, supra; Bookout* v. *Foreman, supra; Henderson* v. *Reynolds, supra; Continental Clay, etc., Co.* v. *Bryson, supra; Hametic Lodge Bldg. Assn.* v. *Esters, supra.* In the case before us we have already stated why we think there was a showing that waste or loss was threatened. Where the emergency could

have been anticipated in time to have given notice a receiver will not be appointed without notice. *Hawkins* v. *Aldridge, supra; Hizer* v. *Hizer, supra; Henderson* v. *Reynolds, supra; Hametic Lodge Bldg. Assn.* v. *Esters, supra; Tormohlen* v. *Tormohlen, supra; Morris* v. *Nixon, supra.* Appellant in this case urges that the emergency here could and should have been anticipated in time for the service of notice of intent to apply for the appointment of a receiver. With this we cannot agree. It does not appear from the complaint, upon which it will be remembered we must rely for our facts, that the plaintiff was ever actually informed that the appellant and other members of the Michigan group would not furnish their pro rata share of the cost of drilling a well or the cost of an offset well on the Stewart lease and plaintiff could not assume that the Michigan group, even though delinquent in payment for work already done, would go so far as to permit a forfeiture and waste of leases which constituted a substantial part of the property in which they had invested their money.

Appellant also argues that the plaintiff could drill these wells itself and be secured by its contractual lien upon the interests of the Michigan group which could be foreclosed. This they contend constitutes an adequate remedy at law. We do not concur in this view. It is true that the plaintiff could have protected the leases and its lien thereon by drilling these wells with its own money, but there is no showing that the plaintiff was financially able to do so. But if it were and plaintiff is compelled to go ahead and drill the wells without the consent of the Michigan group, it cannot charge them for their share of the cost under the provision of the contract that no item of expenditure in excess of $1,000 shall be incurred without the consent and approval of the other parties. If the wells

came in dry the loss would be entirely upon the plaintiff. If they happened to be gushers the Michigan group would profit without having taken a dime's worth of chance. This is hardly an adequate remedy and it is not an approach which appeals to a court of equity.

It is suggested by the Michigan group that the operating contract does not require them to help pay for drilling a test well on the Hunter lease or an offset well on the Stewart lease. This is probably true. They further contend that plaintiff, by receivership, seeks to require them to pay part of the cost of the new wells and that thereby their obligations under the operating contract will be enlarged. This latter contention is not sound. This action is not to require the Michigan group to pay their share of the cost of the new wells, or to impose on them any obligation not required by the operating contract. It is to collect what they admittedly owe for past operations of the four leases under the operating contract and, by receivership, to preserve property upon which, by the operating contract, they had given plaintiff a lien, upon the faith of which plaintiff had advanced for the defendants the large sum of money sought to be collected. Administration of the receivership will be under order of the court, and, when and if, in such administration, action be taken in contravention of the rights of the Michigan group, such rights may then be asserted and protected.

We think that under the facts in this case there was no abuse of discretion in the appointment of a receiver without notice.

The judgment is affirmed.

NOTE.—Reported in 86 N. E. 2d 78.