**In re the MARRIAGE OF Mark A. GORE, Appellant,**

**and**

**Debra L. Gore, Appellee.**

**No. 55A04–8711–CV–366.**

Court of Appeals of Indiana, Fourth District.

Aug. 22, 1988.

Thomas G. Stayton, Joseph H. Yeager, Jr., Baker & Daniels, Indianapolis, for appellant.

Jeffrey A. Berg, Speedway, Stephen A. Oliver, Borin & Oliver, Martinsville, for appellee.

MILLER, Judge.

Mark A. Gore has taken this interlocutory appeal to challenge the imposition of a receivership over his corporation, M.A. Gore of Indiana, Inc. that operates the Mark's Pub tavern, and his personal assets pending the dissolution of his marriage to Debra L. Gore. Mark asks this court to reverse the receivership order and to assess the costs of the receivership against Debra. We reverse the appointment of a receivership over M.A. Gore of Indiana, Inc. and affirm the receivership over Mark's personal assets and remand to the trial court.

## ISSUES

Mark's appeal raises the following issues: [1]

I. Whether notice to Mark was deficient concerning the receivership over his personal assets.

II. Whether the evidence warrants the imposition of a receivership.

III. Whether the court has authority to appoint a receiver as a temporary order in a dissolution proceeding.

IV. Whether Mark should be required to pay the expenses of a receivership unlawfully imposed.

## FACTS

Debra L. Gore sought to dissolve her three year, childless marriage to Mark A. Gore by dissolution proceedings in Marion County November 14, 1986. On that day she procured an order prohibiting Mark from disposing of property. The case was venued to the Morgan Circuit Court and then transferred to the Morgan Superior Court. Six hearings have been held; 690 pages of transcript have been accumulated.[2] Mark has been held in contempt three times for violating the order restraining him from disposing of potential marital assets. The focus upon Mark's contemptuous behavior has prevented the case from proceeding toward final hearing on the merits.

Finding Mark in contempt the third time, the court imposed a receivership over Mark's corporation and his personal assets to protect the marital estate pending the final hearing. Mark petitioned this court to stay the order pending this appeal. After oral argument, an order was entered staying in part the appointment of a receiver. We allowed the receivership over Mark's personal assets to remain in force.

---

1. Mark also challenges the trial court's imposition of jurisdiction over the nonparty corporation, M.A. Gore of Indiana, Inc. But, because we reverse the receivership with respect to this corporation, we need not decide this issue.

2. We have received three (3) motions to supplement the record pursuant to Ind.Rules of Procedure, Appellate rule 7.2(C)(2). We need not grant these motions because the substance averred in the portions of the record we are requested to order from the trial court would have no appreciable impact on our decision.

But, we stayed the receivership over M.A. Gore of Indiana, Inc. subject to the following conditions: 1) Mark's Pub would continue to operate in a normal fashion in the ordinary course of business; 2) neither Mark nor M.A. Gore of Indiana, Inc., would sell, transfer or encumber any asset of M.A. Gore of Indiana, Inc. except in the ordinary course of business; and Mark would deposit with the Clerk of the Morgan County Superior Court the sum of $3,000 which Debra could withdraw at a rate of $150 per week in satisfaction of Mark's spousal maintenance obligation.

Mark and Debra were married August 21, 1983. In contemplation of marriage, Mark and Debra entered into an antenuptial agreement August 4, 1983 setting out the division of their property in case of divorce. The agreement purported to keep Mark's and Debra's estates separate—including property accumulated during marriage. Specific mention is made of Mark's 49% interest in his father's business, J.W. G. Enterprises, Inc. Mark's interest in this business and any additional interest acquired by gift, inheritance, or purchase was to remain Mark's sole property.

The largest potential marital asset was Mark's tavern and package liquor business, J.W.G. Enterprises, Inc. which was doing business as the Sakitumi Lounge. Mark obtained sole ownership of the business from his father in 1986. Mark has maintained that his business interests are separate property and not subject to court order by virtue of the antenuptial agreement. Mark sold the Sakitumi the same day Debra filed for divorce, November 14, 1986 before receiving notice of the restraining order. The purchase price of the Sakitumi was $275,000; the terms were $100,000 down plus monthly payments of $2,771.39 for seven (7) years.

The cumulative evidence of all six hearings is required to put together the full story of the sale of the Sakitumi and Mark's other enterprises during the year following the commencement of the dissolution proceedings. Mark used part of the $100,000 down payment from the Sakitumi to repay a loan from his mother of some $30,000 to $35,000. Mark then started a new business, M.A. Gore of Indiana, Inc. which does business as Mark's Pub.[3] He borrowed $56,000 secured by a second mortgage on the marital residence and borrowed an additional $30,000 from his mother. He traded his old truck in on a new one. He delivered to the sheriff certain household goods for delivery to Debra pursuant to court order. The court found at its October 30, 1987 hearing that the goods Mark supplied were not complete and many of the items were inferior substitutes for those in the order.

The first hearing Mark attended was a contempt hearing held June 9, 1987. Mark had failed to appear at an earlier hearing because his mother was ill. The court exonerated Mark for the sale of the Sakitumi because the sale was completed before Mark received notice of the restraining order. Mark was held in contempt for the repayment of the loan to his mother out of the proceeds of the sale. The court found that Mark had "used a facade of a corporate entity, J.W.G., to mask the true nature of this business, i.e. a sole proprietorship owned and operated by Mark A. Gore" in order to strip assets and deplete funds from the marital estate. As part of its order, the court admonished Mark that should he fail to comply with the provisions of the order, the court, upon petition, would immediately appoint a receiver to manage the affairs of Mark's corporate interests until the divorce proceedings were completed.

Mark was again held in contempt August 4, 1987. He had paid no spousal support as ordered, disbursed the monthly contract payments from the sale of the Sakitumi in violation of court order, and negotiated the parties 1985 joint income tax refund without Debra's endorsement or knowledge. The court found that it would be necessary to appoint a receiver to manage the assets

---

**3.** Mark's Pub may be of dubious value to the marital estate because Mark has very little equity in it; Mark's Pub is heavily leveraged.

of Mark's corporate interests in order to preserve the potential marital estate. The court gave the parties a week to agree upon a fiduciary.

August 10, 1987, Mark petitioned the court for relief from its order. He requested that he be allowed a week to file a verified accounting the court had ordered months earlier. He also requested the receivership be stayed until or unless he be found in further contempt. His petition twice refers to a receivership over his personal assets but makes no mention of one over his corporate interests. On August 11, 1987, the court granted Mark relief by staying its order instanter.

Mark was again found in contempt at an October 30, 1987 hearing and given a suspended thirty (30) day sentence. The court found it had no alternative but to lift the stay, and order that a receiver be appointed to preserve the marital estate. Again the court gave Mark and Debra a week to agree upon a fiduciary before it would order one on its own. Sixteen days later and absent any agreement by Mark and Debra as to the selection of a corporate fiduciary, Debra advised the court by motion that it would be necessary for the court to select a receiver and recommended the certified public accounting firm of Plasterer and Mann, P.C. The court appointed Plasterer and Mann, P.C. after the posting of bond as receivers over Mark's personal assets and M.A. Gore of Indiana, Inc. November 16, 1987.

## DECISION

### I. *Receivership over Mark's Personal Assets—Sufficiency of Notice*

█ Mark asserts that the appointment of a receiver over his personal assets is error because notice was never properly served upon him. The problem arises out of the blur between Mark's corporate and personal interests. The record is replete with notice to Mark that if he continued to disobey court orders a receivership would be imposed over his corporate assets. But, nowhere in the record does Mark receive notice of an impending receivership over his personal assets.

The adequacy of notice is defined by statute. IND.CODE 34-1-12-9 reads: "[r]eceivers shall not be appointed, either in term or vacation, in any case, until the adverse party shall have appeared or shall have had reasonable notice of the application for such appointment, except upon sufficient cause shown by affidavit." The statute is satisfied either by an "appearance" or by "reasonable notice." In all previous cases interpreting this statute, receiverships have been sought at the commencement of lawsuits and the "reasonable notice" requirement has been analyzed. No case, as yet, has held an "appearance" alone to be adequate.

Mark contends that notice must be given in the form of a pleading. He relies upon the following language from *Indianapolis Dairymen's Co-op v. Bottema* (1948), 266 Ind. 237, 79 N.E.2d 399, 403 for this proposition:

"... [T]here must be some application filed on behalf of the parties seeking the appointment of the receiver, and invoking the powers of the court to be exercised in that behalf. He must map out by some form of pleading, stating a cause for the appointment of receiver, that the opposite parties may know on what grounds the right to receiver is claimed and that they may know what they have to meet and defend against to prevent the appointment and the pleadings in this behalf will be bound and limit the inquiry."

*Indianapolis Dairymen's* is distinguishable from the present case because it interprets the reasonable notice requirement for a receivership sought at the commencement of an action. However, the importance of procedural protection is not forgotten or diminished under the "appearance" requirement. The vice to be avoided is a defendant's property being summarily wrested from him upon *ex parte* application. *Albert Johann & Sons Co. v. Berges* (1958), 238 Ind. 265, 150 N.E.2d 568.

Mark had an appearance. He himself set out the parameters of the court's inquiry over the propriety of a receivership over his personal assets by his own pleading. His petition of August 10, 1987, after the

court had ordered a receivership but before it had appointed one, makes two references to a receivership over his personal assets.[4] This petition conditioned the appointment on Mark being held in further contempt. The court granted Mark relief by staying its order instanter. Mark made an appearance October 23, 1987 to defend against another contempt citation. He was held in contempt and the receiver was appointed. Mark got what he asked for in his petition; the "appearance" requirement of IND. CODE 34–1–12–9 has been met.

## II. Sufficiency of Evidence/Propriety of Receivership

■ Mark asserts the evidence does not justify the imposition of a receivership under the strict requirements of Indiana law. Our scope of review of an interlocutory order appointing a receiver is limited. We will not weigh the evidence on appeal and we must construe the evidence along with all reasonable inferences in favor of the trial court's decision. *McKinley v. Long* (1949), 227 Ind. 639, 88 N.E.2d 382. The appointment of a receiver is considered to be in the sound discretion of the trial court and therefore our standard of review is that of abuse of discretion. *U.S. Aircraft Financing, Inc. v. Jankovich* (1977), 173 Ind.App. 644, 365 N.E.2d 783.

Mark asserts and we recognize that the appointment of a receiver is an extraordinary and drastic remedy to be exercised with great caution.

"The action affects one of man's most cherished and sacred rights guaranteed by the United States Constitution—the right to be secure in his property. This right is fundamental to every society in which men are free. For these reasons the statute which grants such authority is to be strictly construed." *State ex rel. Makar v. St. Joseph County Circuit Court* (1962), 242 Ind. 339, 179 N.E.2d 285, 289–90.

■ In *Ziffrin v. Ziffrin* (1962), 242 Ind. 351, 179 N.E.2d 276, 279 our supreme court cautioned that the power to appoint a receiver "should be exercised only when it is clear that no other full and adequate remedy exists whereby justice between the parties may be affected and a wrong prevented." In 2 I.L.E. *Receivers* § 4 (1959), it is stated "[t]he power to appoint a receiver should be exercised with utmost caution, and only under special and peculiar circumstances demanding summary relief. A receiver should be appointed only in a clear case of extreme necessity, and only where justice would, in all probability, be defeated by the failure to appoint a receiver. A receiver should not be appointed where no benefit or advantage is to be gained from the appointment." Accordingly, the standard by which the appointment can be justified is exceptionaly stringent. *Crippen Printing Corp. v. Abel* (1982), Ind.App., 441 N.E.2d 1002.

### Propriety of the Appointment over Mark's Pub

■ The trial court based its authority to appoint the receivership upon IND. CODE

---

4. Mark's August 10, 1987 petition reads in pertinent part:

Comes now Mark A. Gore, who first duly sworn upon his oath, alleges and says: ... 6. That respondent files this petition and respectfully requests that this Court stay its order *appointing a receiver to manage the assets of Mark A. Gore* for the reason that he has complied in full with this Court's order of May 26, 1987, June 7, 1987, and August 7, 1987, and represents to this Court that he will continue to do so until such time as this matter is finally resolved.

\* \* \* \* \* \*

8. Respondent respectfully requests that this Court stay its order appointing receiver until and unless such time that proof is presented to this Court that the said Mark A. Gore has failed to further comply and to keep current in his spousal payments and any other orders entered against him by this Court.

9. That respondent would further show to the Court that he will have on file during the week of August 10, 1987, the accounting as ordered by this Court in its order of June 9, 1987, more specifically within its order under Paragraph A(1)(2)(3)(4).

WHEREFORE, respondent respectfully requests that this Court enter its immediate stay of its order of August 4, 1987, *appointing a receiver over his assets* until and unless such time that he is found to be in further arrearage on the obligations heretofore ordered paid by him by this Court and for all other relief proper in the premises. (emphasis ours)

34–1–12–1(3) and (7)(Supp.1988).[5] The appointment of a receiver is a statutory remedy; proper grounds for its application must be shown. Our supreme court set out a three-prong test to apply in determining the propriety of the appointment of a receivership over a corporation. Before a receiver may be appointed:

> "(1) An emergency must be shown to exist that the management of an operation of a corporation must be taken over at once from those in control.
>
> (2) An irreparable damage and injury must result unless a receiver is appointed, and
>
> (3) There must be no adequate remedy otherwise available." *Lafayette Realty Corp. v. Moller* (1966), 247 Ind. 433, 215 N.E.2d 859, 862.

The present case is similar to *Tormohlen v. Tormohlen* (1936), 210 Ind. 328, 1 N.E.2d 596 in which our supreme court reversed a receivership imposed over the husband's large chicken hatchery operation during the pendency of his divorce in order to prevent waste or loss to the marital estate. The husband had fled Indiana to evade the court's jurisdiction but had left some competent, trusted persons in charge of the business operations. The court noted that the business continued to operate successfully in holding that no extreme emergency or imperious necessity existed which required the imposition of a receivership without notice.

■ The trial court appointed a receiver to punish Mark and to ensure that its orders would be carried out. This application of the expensive remedy of a receivership over Mark's Pub is contraindicated. The trial court heard absolutely no evidence that 1) the receiver appointed or, for that matter, any available fiduciary had any expertise in managing a tavern; or 2) that Mark's Pub or the marital estate would

benefit from the imposition of a receivership. No evidence has been presented with respect to, nor has the court made any attempt to consider, the attendant side-effects of a receivership. The risk of mismanagement, the disruption of credit, and the expense of administration all would serve to diminish rather than to preserve the marital estate contrary to the intended purpose of the receivership. We take heed of the following admonition in *Indianapolis Dairymen's Co-op, supra:* "A receivership is not a panacea for all business ills. The remedy may be worse than the disease. Even the suggestion of a receivership, as all know, may cause capital to hide in its shell." 79 N.E.2d at 404 (citing 16 Fletcher Cyc., Corporations, Perm. Ed., § 7697, pp. 90–93).

In a Missouri Court of Appeals decision, *Lynch v. Lynch* (1955), Mo.App., 277 S.W. 2d 692, a receivership was imposed upon an apartment building a husband and wife owned by the entirety to protect the incompetent, institutionalized wife's interest. Before the imposition of the receivership, the husband maintained and administered the apartment house in an efficient and business like manner, keeping the mortgage payments current and the property in good repair. Under the receivership, the property deteriorated and fell into disrepair. The court held the original appointment of the receivership error stating:

> "The appointment of a receiver is essentially a prerogative of equity, which may be exercised as a means of conserving the property or assets for the benefit of all parties in interest. The court will be authorized to appoint a receiver if it appears that, through fraud, mismanagement, misconduct, or otherwise, there is a likelihood that the property will be squandered, wasted, misappropriated or unlawfully diverted without the court's

---

**5.** IND.CODE (Supp.1988) 34–1–12–1 reads in pertinent part:
"A receiver may be appointed by the court in the following cases:
    (3) In all actions when it is shown that the property, fund or rent, and profits in controversy, is in danger of being lost, removed or materially injured.

    (7) And in such other cases as it may be provided by law, or where, in the discretion of the court, or the judge thereof in vacation, it may be necessary to secure ample justice to the parties."

intervention. But, absent threatened destruction or dissipation of the property, or *where there is no good cause to believe that benefit would result from the appointment of a receiver*, then the court should decline to make such an appointment. *Robinson v. Nick*, [1940] 235 Mo.App. 461, 136 S.W.2d 374, 395. The power to appoint a receiver is a delicate one which is reluctantly exercised by the courts. 75 C.J.S., Receivers, § 15, p. 677. The power to act rests very largely within the sound discretion of the court. 75 C.J.S., Receivers, § 16, p. 679. A receiver should be appointed only when the court is satisfied that the appointment will promote the interests of one or both parties, that it will prevent manifest wrong, *imminently* impending, *and that the injury resulting will not be greater than the injury sought to be averted.* 75 C.J.S., Receivers, § 17, p. 681." *Id.* 277 S.W.2d at 694. (emphasis in original)

The evidence and circumstances of the present case do not warrant the drastic remedy of a receivership over M.A. Gore of Indiana, Inc. The first two elements of the *Lafayette Realty Corp., supra* test have not been met. There has been no showing that Mark is likely to dissipate assets to the extent that Debra's claim on the marital estate cannot be satisfied. Mark's Pub, although heavily leveraged, appears to be operating successfully. Mark has years of experience in managing taverns. The account receivable from the sale of the Sakitumi, monthly payments of $2,771.31, is secured and should remain intact under court supervision. Mark's business reputation and livelihood depend on the success of Mark's Pub. We think it most unlikely

that Mark would intentionally bankrupt his business just to spite Debra. We reverse the appointment of a receivership over M.A. Gore of Indiana, Inc. because of the total lack of evidence that such an action would preserve the marital estate or would be necessary to secure ample justice to the parties.

### Propriety of the Appointment over Mark's Personal Assets

On the other hand, the evidence supports the imposition of a receivership over Mark's personal assets. As described earlier, Mark established a pattern of contemptuous behavior by repeatedly violating court orders. He cannot be counted on to comply with court orders until final distribution. The trial court grew tired of having "wrestled" Mark "like an alligator" and properly turned this responsibility over to a receiver.

■ The receiver can ensure that the payments from the sale of the Sakitumi are applied pursuant to court order. Also, this fiduciary will be able to exert considerable influence over Mark to prevent him from diverting assets out of the potential marital estate. A receiver over Mark's personal assets is not dangerous to the marital estate as is the receivership over the corporate assets. We affirm the appointment of a receivership over Mark's personal assets.

### III. *Authority of a Divorce Court to Appoint a Receiver*

Mark contends that the trial court lacks the authority to impose a receivership as a provisional order in dissolution proceedings. The current statutory authority for a divorce court's provisional orders, I.C. 31–1–11.5–7 (Supp.1988),[6] does not contain a

6. The relevant portion of IND. CODE 31–11.5–7 (Supp.1988) is:

(b) As a part of a motion for temporary maintenance, for support or custody of a child, or for possession of property, or by independent motion accompanied by affidavit, either party may request the court to issue a temporary restraining order:

(1) restraining any person from transferring, encumbering, concealing, or in any way disposing of property except in the usual course of business or for the necessities of life;

(2) enjoining any party from molesting or disturbing the peace of the other party;

(3) excluding either party from the family dwelling or from the dwelling of the other upon a showing that harm would otherwise result; or

(4) granting temporary possession of property to either party.

A temporary restraining order may be issued if the court finds on the basis of the moving party's affidavit that injury would result to the

specific power to impose a receivership nor does it grant a broad omnibus of authority to effect orders. Mark reasons that because the predecessor to this statute, § 3–1216, Burns 1933 (repealed in 1973),[7] granted the court a broad and general power to enter temporary orders pending final hearing, the legislature necessarily intended to restrict the court's authority to effect provisional remedies by passing the new statute. Similarly, Mark reasons that because the statute governing final orders in divorce, IND. CODE 31–1–11.5–17 (Supp. 1988),[8] enables the divorce court to implement a broad spectrum of remedies, the statute governing provisional orders was necessarily intended to grant only limited authority to the divorce court to make temporary orders.

■ Mark's reasoning is erroneous. The authority of a divorce court to impose a receivership is not necessarily derived from the dissolution statutes. Ample authority is contained in the general receivership statute, I.C. 34–1–12–1 (Supp.1988) (see footnote 5). The courts have inherent power to appoint receivers in all cases where it is found necessary to protect the rights of all parties, and to properly execute the decrees of the courts. *McElwaine v. Hosey* (1893), 135 Ind. 481, 35 N.E. 272. In *Tormohlen, supra,* our supreme court stated the appointment of a receiver as a temporary order in a dissolution proceeding was authorized either under the then effective dissolution statute or under the then effective general receivership statute. "[I]ndependently of our [dissolution] statute, it is well recognized by textbook writers and decisions of courts of other states that courts have power in divorce actions to appoint a receiver to take possession of property of the defendant within its jurisdiction when necessary to the protection of complainant's rights. 9 R.C.L. p. 249; 53 C.J. p. 23; 19 C.J. pp. 315; and 316; Clark on Receiver, Vol. 1, p. 326." *Id.,* 210 Ind. at 336, 1 N.E.2d at 599. The legislature could not have intended to authorize receiverships for final orders in divorce but not for temporary orders because the remedy would become as superfluous as shutting the barn door after the horse has fled.

IV. *Assessment of the Costs of the Receivership*

Finally, Mark argues that because the receivership was wrongfully imposed he should not be taxed with its costs. He asserts "[a]s the record by its sheer volume indicates, husband has already expended significant legal fees resisting the appointment of a receiver, even before initiation of this appeal. This court therefore should determine that husband is not to be taxed with the costs of the receivership."

■ Because our decision in this case is consistent with our earlier order, no expenses have been wrongfully assessed against Mark. We sympathize with Mark concerning the exorbitant costs associated with the receivership and with this appeal.

moving party if no immediate order were issued.

7. The relevant portion of § 3–1216, Burns 1933 (repealed in 1973) reads as follows:

Pending a petition for divorce, *the court,* or the judge thereof in vacation, *may make,* and by attachment enforce, *such orders for the disposition of the persons, property and children of the parties as may be deemed right and proper* and such orders relative to the expenses of such suit as will insure to the wife an efficient preparation of her case and a fair and impartial trial thereof. And, on decreeing a divorce in favor of the wife or refusing one on the application of the husband, the court shall, by order to be enforced by attachment, require the husband to pay all reasonable expenses of the wife in the prosecution or defense of the petition when such divorce has been granted or refused: Provided, that such orders shall be made under the same rules and regulations, and upon such notice, as restraining orders and injunctions are granted in other civil actions, except that no bond shall be required of either party. (emphasis ours)

8. The relevant portion of I.C. 31–11.5–17 (Supp. 1988) is as follows:

(c) Notwithstanding any other law, all orders and awards contained in the dissolution decree may be enforced by:

(1) contempt;

(2) assignment of wages or other income; or

(3) any other remedies available for the enforcement of a court order, except as otherwise provided by this chapter.

We notice that Mark could have avoided these costs by complying with court orders.

## CONCLUSION

This dissolution proceeding cannot be completed without the resolution of substantial issues. However, such resolution is impossible without compliance with the trial court's provisional orders. The trial court did not act impulsively in imposing the receivership. It was faced with a situation where its restraining orders were being continuously ignored by Mark. However, the imposition of a receivership over Mark's Pub as a punitive sanction is contraindicated. No evidence whatsoever has been presented to show that a receivership for Mark's corporate assets is necessary to secure ample justice to the parties. A corporate receivership is a dangerous remedy which could injure rather than protect the marital estate.

Sufficient evidence has been presented to justify the receivership over Mark's personal assets. A receivership over personal assets does not carry the risk to the potential marital estate inherent in a corporate receivership. In light of Mark's pattern of contemptuous behavior, a personal receivership is necessary to ensure prompt compliance with court orders.

We now reverse the appointment of a receivership over M.A. Gore of Indiana, Inc., affirm the appointment over Mark's personal assets, and remand to the trial court.

CONOVER, P.J., and HOFFMAN, J., concur.