FILED

Mar 17 2016, 8:47 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Abbigail A. Rohmiller | R. Scott Hayes |
| Amy Noe Law | Joel E. Harvey |
| Richmond, Indiana | Hayes Copenhaver Crider Harvey, LLP |
| | New Castle, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jeffery Allen Ring, | March 17, 2016 |
| *Appellant-Respondent,* | Court of Appeals Case No. 33A01-1507-DR-1024 |
| v. | Appeal from the Henry Circuit Court |
| Kimberly S. Ring, | The Honorable Mary G. Willis, Judge |
| *Appellee-Petitioner.* | Trial Court Cause No. 33C01-1210-DR-282 |

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Respondent, Jeffery A. Ring (Jeffery), appeals the trial court's Order Appointing Commissioner to Operate and Sell Farm Real Estate to Satisfy Petitioner's Judgment following its Decree of Dissolution of Marriage to Appellee-Petitioner, Kimberly S. Ring (Kimberly).

We affirm in part, and reverse in part.

## ISSUES

Jeffery raises one issue on appeal, which we restate as follows:

1) Whether the parties' subsequent agreement to sell a small parcel of a farm was a permissible modification of the dissolution decree; and

2) Whether the trial court's appointment of a commissioner to operate and sell the farm following Jeffery's non-compliance with the terms of the dissolution decree was an impermissible modification of the dissolution decree.

## FACTS AND PROCEDURAL HISTORY

Jeffery and Kimberly were married in October 1991. During their marriage, they had two children, both of whom are emancipated. Jeffery was a farmer and Kimberly worked for the Union School Corporation. Jeffery farmed his own land as well as rented agricultural land. By the time the parties separated, they had acquired two parcels of farmland, one consisting of approximately 145 acres (Parcel A) and one consisting of approximately 79 acres (Parcel B), silage,

farming equipment, machinery, livestock, and other property. Parcel A was valued at $929,500, and Parcel B was valued at $471,600. Both parcels secured three loans with a total amount of approximately $170,000.[1] At the time of the separation, the total marital estate, after subtracting liabilities, had a value of $2,353,854.89.

[5] On October 18, 2012, Kimberly filed a petition to dissolve the parties' marriage. The trial court held a final dissolution hearing on November 19, 2014 and entered its Decree of Dissolution of Marriage on December 9, 2014. The trial court determined that an equal division of the marital estate between the parties was equitable and granted Jeffery possession of the marital home, Parcel A and Parcel B, and farming equipment. To realize the equitable distribution of the martial estate, the trial court ordered Jeffery to pay $1,140,825.45 to Kimberly under the following conditions:

> [Jeffery] has testified that he has made [an] effort to borrow funds and that he is able to borrow the sum of $400,000. The [trial court] directs him to do so immediately and directs [Kimberly] to cooperate by signing such documents as are necessary to enable [Jeffery] to borrow against [Parcel A and Parcel B]. In the event [Jeffery] is unable to borrow said sum, he is directed to borrow the maximum amount that he can borrow and to pay the same to [Kimberly] immediately. [Jeffery] shall have ninety (90) days from the date of this [D]ecree to complete the loan application

---

[1] Jeffery admits to the total loan amount, but does not specify the distribution of it as to the parcels of land. (Ex. 2); (Transcript p. 35).

process. Upon receiving funds, they shall be paid over to [Kimberly] immediately.

\* \* \*

[After payment of $400,000 to Kimberly, the balance] shall be paid in full with interest at the rate of 5.5% per annum within ten (10) years of the date hereof with a minimum of $75,000 being paid each year on or before the anniversary of this Decree. The judgment shall be a lien on all real estate owned by [Jeffery] junior in priority only to the loan [Jeffery] has been directed to obtain in this paragraph.

(Appellant's App. pp. 51-52).

[6] Shortly thereafter, Jeffery and the parties' son borrowed $413,000 from a bank to purchase a farm for the son. The new loan was secured by Parcel A. Due to the new loan, Jeffery was unable to obtain $400,000 to satisfy the judgment.

[7] On March 23, 2015, Kimberly filed a Citation for Contempt alleging that Jeffery had failed to comply with the trial court's order to complete the loan application process within ninety days from the Decree of Dissolution of Marriage.[2] On May 18, 2015, Kimberly filed a Request for Orders to Enforce Decree of Dissolution of Marriage requesting the trial court to appoint a commissioner to sell the farms to satisfy the judgment. The trial court held a hearing on June 17, 2015, and, on June 30, 2015, the trial court entered its

---

[2] There is no indication in the record that Jeffery was found in contempt for failing to complete the loan application.

order appointing Halderman Farm Management Service, Inc. (Commissioner) as a commissioner. The trial court authorized Commissioner to

> [U]se its best efforts to maximize the value of the farms and the farming operation to achieve satisfaction of the judgment held by [Kimberly].
>
> * * *
>
> a. [T]ake possession and operate the two (2) farms . . . .
>
> b. [P]ay to the [c]ourt for the benefit of [Kimberly] all revenue generated by the farm operations over and above the costs expended to generate said revenue.
>
> c. [P]ay itself for services consistent with its usual and customary management fees.
>
> * * *
>
> e. [S]ell so much of the farm real estate as Commissioner believes to be prudent to maximize the value of the said farm real estate . . . .

(Appellant's App. pp. 76-77).

[8] On August 26, 2015, Kimberly filed another Citation for Contempt alleging that Jeffery made misleading representations to the trial court regarding his efforts to borrow the funds and that Jeffery failed to cooperate with Commissioner. On October 5, 2015, the trial court held a hearing on the citation. At the conclusion of the hearing, Jeffery and Kimberly agreed that

Commissioner would sell Parcel B to satisfy the judgment and that the citation would remain pending. The trial court approved the parties' agreement in its order on October 7, 2015.

[9] Jeffery now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Permissible Modification*

[10] Jeffery's appeal is centered on the trial court's appointment of Commissioner. After filing the appeal, however, Jeffery and Kimberly agreed to sell Parcel B with the help of Commissioner to satisfy the judgment. Property distribution settlements approved as part of a dissolution may be modified only where both parties consent or where there is fraud, undue influence, or duress. *Johnson v. Johnson*, 920 N.E.2d 253, 258 (Ind. 2010); *see also Marriage of Snow v. England,* 862 N.E.2d 664, 668 (Ind. 2007) (as with other contracts, a division of property may only be modified according to the terms of the agreement, if the parties consent, or if fraud or duress occurs); *Myers v. Myers*, 560 N.E.2d 39, 42 (Ind. 1990) (a property settlement agreement incorporated into a final dissolution decree and order may not be modified unless the agreement so provides or the parties subsequently consent). As such, following our review of the record, we conclude that the parties' subsequent agreement to sell Parcel B approved by the trial court was a permissible post-dissolution modification of their property distribution settlement.

## II. *Impermissible Modification*

[11]     As to Parcel A, Jeffery argues that the appointment of Commissioner to operate and, if needed, sell the farms was an impermissible modification of the dissolution decree. Kimberly responds that it was not a modification but an enforcement remedy pursuant to Indiana Code section 31-15-7-10.[3]

[12]     Recently, our supreme court provided a comprehensive analysis of the law concerning the post-dissolution modification of property distribution between former spouses in *Ryan v. Ryan*, 972 N.E.2d 359 (Ind. 2012). The *Ryan* court reviewed the language of Indiana Code sections 31-15-2-17(c) and -7-9.1 and reiterated that the legislature unambiguously prohibited the post-dissolution modification of property distribution agreements between former spouses, except in case of fraud or where both parties consent, because they are economic in nature—ordinary contracts—and as with other contracts, may only be modified according to their terms. *Ryan*, 972 N.E. at 361-63.

[13]     Jeffery specifically points to the language of the dissolution decree and asserts that he was only required "to complete the loan application process within ninety days" and, if he failed to obtain the loan, to "borrow the maximum amount that he [could] borrow." (Appellant's Br. p. 5). Jeffery insists that there was no obligation to seek an outside person to manage or sell the land to satisfy the judgment. Although a court has no authority to modify a property-

---

[3] Kimberly does not allege that their original agreement incorporated into the dissolution decree was made fraudulently.

settlement agreement, it does not mean that a court has no authority to resolve a dispute over the interpretation of a settlement agreement or property-division order. *Ryan*, 972 N.E2d at 363. When a party asks a court to clarify a settlement agreement, the court's task is one of contract interpretation. *Id.* This is because settlement agreements are contractual in nature and binding if approved by the trial court. *Id.* As such, a settlement agreement is interpreted according to the general rules for contract construction. *Id.* at 364. That is, unless the terms of the contract are ambiguous, they will be given their plain and ordinary meaning. *Id.* Clear and unambiguous terms in the contract are deemed conclusive, and when they are present we will not construe the contract or look to extrinsic evidence but will merely apply the contractual provisions. *Id.* As this dispute requires us to interpret the decree of dissolution, our standard of review is *de novo*. *See, e.g., Bd. of Comm'rs of Cnty. of Jefferson v. Teton Corp.*, 30 N.E.3d 711, 713 (Ind. 2015).

[14] In *Ryan,* the parties agreed to sell two properties they owned and divide the proceeds, subject to a proviso that neither party was required to accept a sale yielding net proceeds below specified minimums. *Ryan*, 972 N.E.2d at 360. After almost 20 months on the market, the parties were unable to sell their properties, so the former husband moved the trial court to order the properties to be sold at the prevailing fair market value. *Id*. at 361. The trial court denied the motion and, on appeal, our supreme court affirmed. *Id*. at 371. The *Ryan* court found that there was "no ambiguity in the language of the parties' agreement that would permit [the court] to conclude as a matter of contract law

that [the former wife was] bound to agree to sales prices for the properties …

less than those stated in the agreement." *Id*. at 364-65.  Even though, the

former husband was trying to label his request as a clarification, in fact, it was a

request to modify the original agreement.  *Id*. at 365.

[15]     Here, similarly, the language of the parties' agreement was unambiguous.

According to the dissolution decree, Jeffery was required to submit his loan

application, and if denied, try again.  There was no language requiring the

parties to sell the land to satisfy the judgment in their original agreement.

[16]     Kimberly, in turn, maintains that Jeffery's assertion was a

"mischaracterization" of the trial court's order.  (Appellee's Br. p. 6).  The trial

court's appointment of Commissioner, she continues, was an enforcement

remedy consistent with the appointment of a receiver, which was a permitted

method of enforcing an order issued in a dissolution proceeding.  To support

her argument, Kimberly cites to *Gore v. Gore*, 527 N.E.2d 191, 198 (Ind. Ct.

App. 1988).

[17]     In *Gore*, the former husband operated a pub.  *Id*. at 192.  After finding the

former husband in contempt three times for violating the order restraining him

from disposing of potential marital assets, the trial court appointed a receiver

over the pub.  *Id*.  On appeal, the *Gore* court reversed the imposition of the

receivership over the pub because there was no evidence presented to show that

the receivership was necessary to secure ample justice to the parties.  *Id*. at 199.

"[A] receivership [over a business operation] is a dangerous remedy which could injure rather than protect the marital estate." *Id*.

> The appointment of a receiver is essentially a prerogative of equity, which may be exercised as a means of conserving the property or assets for the benefit of all parties in interest. The court will be authorized to appoint a receiver if it appears that, through fraud, mismanagement, misconduct, or otherwise, there is a likelihood that the property will be squandered, wasted, misappropriated or unlawfully diverted without the court's intervention. But, absent threatened destruction or dissipation of the property, or where there is no good cause to believe that benefit would result from the appointment of a receiver, then the court should decline to make such an appointment. The power to appoint a receiver is a delicate one which is reluctantly exercised by the courts. The power to act rests very largely within the sound discretion of the court. A receiver should be appointed only when the court is satisfied that the appointment will promote the interests of one or both parties, that it will prevent manifest wrong, imminently impending, and that the injury resulting will not be greater than the injury sought to be averted.

*Id*. at 196-97 (citations omitted).

[18]   We find the *Gore* court's decision instructive. The evidence and circumstances of the present case, similarly, do not warrant the imposition of the receivership over Jeffery's farm. There was no evidence presented to show that Jeffery was mishandling his farming operation. Conversely, the record reveals that Jeffery was farming the land even after the appointment of Commissioner. There was no evidence presented to show that Jeffery lacked experience or ability to farm. In fact, farming was his and his family's livelihood for generations. Jeffery did

not do anything wrong with his farm to warrant the court's intervention. His alleged refusal to cooperate with Commissioner and an attempt to make himself less attractive to the lending institutions have nothing to do with the successful handling of his farm, which is the crux of the receivership law. *See*, *e.g.*, *Tormohlen v. Tormohlen*, 1 N.E.2d 596 (Ind. 1936) (held that a receivership was not warranted over a large chicken hatchery because a farmer left trusted persons to handle the farm to prevent waste before fleeing the state to escape the dissolution court's jurisdiction).

[19] Accordingly, because the language of the dissolution decree was unambiguous, we conclude that the trial court's appointment of Commissioner to operate and, if needed, sell Parcel A was an impermissible modification of the original terms between the parties because it went beyond Jeffery's obligation to attempt to obtain a loan to satisfy the judgment. Also, we reverse the appointment of Commissioner as to Parcel A because no evidence was presented to show that Jeffery was likely to mismanage, waste, misappropriate, or otherwise harm his farm which could have warranted the court's intervention and would have been necessary to secure ample justice to the parties. Finally, we reiterate that this decision is limited to Parcel A because Jeffery and Kimberly had successfully modified their property dissolution agreement as to Parcel B by subsequently agreeing to sell Parcel B with the help of Commissioner.

## CONCLUSION

Based on the foregoing, we hold that the parties' subsequent agreement to sell Parcel B was a permissible modification of their original marital property disposition settlement, and, as to Parcel A, the trial court's appointment of Commissioner without Jeffery's consent and without assertion of fraud was an impermissible modification of the parties' original agreement.

Affirmed in part, and reversed in part.

Najam, J. and May, J. concur