

**ATTORNEY FOR APPELLANT**

Jonathan R. Deenik
Deenik Law, LLC
Greenwood, Indiana

**ATTORNEY FOR APPELLEE**

Michael Cheerva
Emswiller Williams Noland &
Clarke, LLC
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Donald P. Katz, <br><br> *Appellant-Petitioner,* <br><br> v. <br><br> Lori B. Katz, <br><br> *Appellee-Respondent.* | January 24, 2019 <br><br> Court of Appeals Case No. 18A-DR-1125 <br><br> Appeal from the Hamilton Superior Court <br><br> The Honorable William J. Hughes, Judge <br><br> Trial Court Cause No. 29D03-1401-DR-888 |

**Shepard, Senior Judge.**

[1]     When parties negotiate a court-approved property settlement during dissolution of marriage proceedings but later informally agree to carry out its terms through predictable, if different, means, does this latter path constitute an improper amendment of the original settlement?

[2] Under the facts of this case, we conclude that the parties' later arrangements fell within the larger terms of the formal decree and that Donald Katz was required to make additional property settlement payments to Lori Katz under the terms of their court-approved agreement. We affirm the trial court.

## Facts and Procedural History

[3] In 2014, Donald filed a petition to dissolve the parties' marriage. The marital estate included the parties' house in Carmel, Indiana, a condominium in Colorado, and various investments and business interests. Donald and Lori negotiated a settlement agreement that the trial court approved and incorporated in a decree of dissolution on August 17, 2016. Among other provisions, the parties agreed the house and the condominium would be sold, and the proceeds would be used to pay off a mortgage and a line of credit secured by those properties. The agreement further stated Donald would pay Lori a monthly sum to equalize the division of marital assets. According to the agreement, if the parties later agreed to not sell either or both properties, Lori would be entitled to additional monthly payments "to add back the costs of sale that are no longer being incurred." Appellant's App. Vol. 2, p. 23.

[4] The home and condominium were listed for sale. On June 6, 2017, Donald and Lori signed a one-page document that Donald had drafted without an attorney. In the document, Donald and Lori explained they wanted to "modify [their] earlier arrangement" and remove the properties from listings for sale "for the foreseeable future." *Id.* at 36. The document further states, "Donald P.

Katz has expressed a desire to continue to occupy the [house] and maintain [the condominium] as a second home." *Id.* Donald and Lori further stated they wanted to "refinanc[e] the current loan secured by these properties into a more favorable mortgage program." *Id.* Lori quitclaimed her interest in the house after the document was signed, but she and Donald were still both parties to a mortgage on the property.

[5] On November 6, 2017, Donald filed a request for appointment of a commissioner. That document has not been provided to this Court. Lori responded by asking the trial court to either: order the sale of the house and condominium, or order Donald to make additional monthly payments to accurately account for the changed division of marital property.

[6] The court held an evidentiary hearing. On January 30, 2018, it denied Donald's request for appointment of a commissioner. The court granted Lori's request for additional payments, increasing Donald's monthly obligation from 154 payments (per the original divorce decree) to 186 payments. In its order, the court determined the additional payments were necessary because "[t]he parties agreed not to sell the marital home and condo as shown in [the June 6, 2017 document]." *Id.* at 13. This appeal followed.

# Issue

[7] Donald raises three issues, which we consolidate and restate as: Whether the trial court erred in ordering Donald to make additional payments to Lori.

## Discussion and Decision

[8] Neither party requested findings of fact and conclusions thereon, and the trial court did not issue any. We review the court's order under a general judgment standard. A general judgment will be affirmed if it can be sustained upon any legal theory consistent with the evidence. *Shelby Eng'g Co., Inc. v. Action Steel Supply, Inc.*, 707 N.E.2d 1026 (Ind. Ct. App. 1999). We neither reweigh the evidence nor judge the credibility of the witnesses. *Bedford Recycling, Inc. v. U.S. Granules Corp.*, 634 N.E.2d 1361 (Ind. Ct. App. 1994), *trans. denied*.

[9] Donald argues the trial court erred in ordering him to make additional monthly payments to Lori due to their agreement not to sell the house and the condominium. He claims the evidence showed he still intended to sell those properties later, and the court's decision amounted to an improper modification of the settlement agreement.

[10] Settlement agreements are contractual in nature and bind the parties when the court merges and incorporates that agreement into the divorce decree. *Shorter v. Shorter*, 851 N.E.2d 378 (Ind. Ct. App. 2006). Once incorporated into a judicial decree, such agreements may not be altered, absent fraud, duress, or consent of the parties. Still, as Justice Sullivan observed for a unanimous Court, that "does not mean that a court has no authority to resolve a dispute over the interpretation of a settlement agreement or property-division order." *Ryan v. Ryan*, 972 N.E.2d 359, 363 (Ind. 2012).

[11] When such moments arise, and the terms of a contract are unambiguous, we do not construe its terms or look to extrinsic evidence. *Deel v. Deel*, 909 N.E.2d 1028 (Ind. Ct. App. 2009). Unambiguous terms are conclusive, and we will merely apply the contractual provisions. *Id.*

[12] According to the parties' settlement agreement, the house and the condominium were to be listed for sale and "remain listed until sold." Appellant's App. Vol. 2, p. 18. Donald could live in the house "until its sale," but he was "solely responsible for all mortgages . . . and all other obligations associated with the marital residence." *Id.* In addition, "[Donald] shall pay [Lori a] property settlement judgment of $3,600 a month for 154 months." *Id.* at 22. If the proceeds from the sale of the house and the condominium were less than certain specified amounts, then Lori's settlement payments were to be reduced accordingly. By contrast, "[i]n the event there is a future agreement not to sell either or both of the properties, counsel for [Donald and Lori] shall calculate the extension of the payments to add back the costs of sale that are no longer being incurred." *Id.* at 23. The unambiguous language of the agreement provides Lori is entitled to additional payments if the properties are removed from sale by agreement of the parties.

[13] Did the trial court properly determine the parties agreed not to sell the properties? Donald and Lori's June 6, 2017 document states, "Donald P. Katz has expressed a desire to continue to occupy the [marital home] and maintain [the condominium] as a second home." *Id.* Donald and Lori further stated they wanted to "refinance[e] the current loan secured by these properties into a

more favorable mortgage program." *Id.* Lori later testified Donald had told her he planned to return the properties to sale listings, but he had not done so by the time of the evidentiary hearing. Tr. Vol. 2, p. 45. This is ample evidence from which the trial court could have reasonably concluded the parties had agreed to not sell the properties, and, further, that Donald intended to keep them for an extended period, thus triggering Donald's contractual obligation to make additional payments to Lori. Donald points to evidence that he had removed the properties from sale listings on a temporary basis while he worked out financing for his businesses. We see this as a request to reweigh the evidence.

[14] Donald further claims the June 6, 2017 document was not valid because it did not modify the settlement agreement. We agree the document did not modify the original settlement agreement, which required any modification to be submitted to a court for approval. Lori testified she wanted to submit the document to the trial court, but Donald refused.

[15] Even if the document did not modify the settlement agreement, it is sufficient evidence of the parties' intent to not sell the properties. Donald does not dispute drafting or signing the document. In addition, the original settlement agreement unambiguously states the parties could make a "future agreement" to not sell the properties. Appellant's App. Vol. 2, p. 23. Indeed, the agreement described how to calculate the additional payments to Lori if she and Donald agreed not to sell one or both of the properties. The original settlement agreement did not require that any future agreement must meet the requirements for a formal modification of the settlement agreement.

[16]     We conclude that the June 6, 2017 signed document, which reflected the parties' agreement not to sell the properties, was explicitly contemplated by the terms of the original settlement.[1] *See* Ind. Code § 31-15-2-17(c) (1997) (once an agreement on property disposition is incorporated into a decree, it may be modified "as the agreement prescribes or the parties subsequently consent"); *see also Ring v. Ring*, 51 N.E.3d 1245, 1250 (Ind. Ct. App. 2016) (noting the parties had agreed to sell a parcel of land, which was permissible under the terms of their property settlement agreement, but rejecting the proposed sale of a different parcel as an inappropriate modification because one party objected).

[17]     Finally, Donald claims the trial court's award of additional property settlement payments was unfair because he had no notice that the court would rule upon "the issue of whether the parties had agreed not to sell the properties." Appellant's Br. p. 12.

[18]     The record shows otherwise. In Lori's response to Donald's request to appoint a commissioner, she claimed the settlement agreement required the parties to sell the marital home and the condominium. She further stated Donald had removed the properties from sale and she was entitled to either: (1) a court order to sell the properties; or (2) additional property settlement payments from Donald. Donald was clearly informed in advance of the hearing that Lori

---

[1] Donald also argues the trial court's order effectively modified the original settlement agreement. To the contrary, the court merely applied the plain terms of the agreement by determining: the parties decided not to sell the home and the condominium; and, under the agreement, Lori was entitled to additional payments because of the decision not to sell.

sought additional property settlement payments due to his withdrawal of the properties from sale, and he was by no means ambushed at the evidentiary hearing.

[19]  For these reasons, we affirm the judgment of the trial court.

[20]  Affirmed.

May, J., and Robb, J., concur.